**Manoucher ROSTAMKHANI, Relator,**

v.

**CITY of ST. PAUL, et al., Respondents.**

No. C7–01–1757.

Court of Appeals of Minnesota.

June 4, 2002.

Timothy C. Cook, Moore, Costello & Hart, P.L.L.P, Minneapolis, for relator.

Manuel J. Cervantes, St. Paul City Attorney, Meghan Riley, Assistant City Attorney, St. Paul, for respondents.

Considered and decided by KLAPHAKE, Presiding Judge, RANDALL, Judge, and FOLEY, Judge.

## OPINION

FOLEY, Judge.*

Relator seeks certiorari review of a decision by the city to demolish his property, contending that the decision was arbitrary and capricious because (1) the city previously indicated the property could be developed; (2) the record of the city's proceeding is incomplete; and (3) the demolition order was based on a procedure that is inconsistent with the relevant ordinances. Because the city failed to take into account evidence that established relator's intent to rehabilitate the property, we find its decision to be arbitrary and capricious. We therefore reverse and remand for further findings, instructing the city to take into consideration all relevant evidence that was made available to it before rendering its decision.

## FACTS

On October 26, 2000, relator Manoucher Rostamkhani purchased residential property in St. Paul at a tax-forfeited land auction. The property contained a vacant, dilapidated building, which relator intended to develop into a four-unit rental dwelling. At the auction, the property was described as suitable for a four-unit dwelling. Shortly after relator began preparations to rebuild the dwelling, he learned

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

that the boundary lines of the property had been miscalculated. As a result, the corrected plot was smaller and not zoned to allow for the construction of a four-unit dwelling. Respondent City of St. Paul insisted that the property could only be developed as a single-unit or duplex dwelling. After learning this, relator delayed any further work on or investment in the land and instead sought a zoning variance from the city to allow for a four-unit dwelling to be built on the property.

In April 2001, the city inspected relator's property to prepare a building deficiency inspection report and notified him that he had until June 8, 2001, to remedy all of the deficiencies that constituted nuisance conditions. Because the city had not yet acted on his variance request, relator took no remedial action on the property.

On June 15, 2001, the city notified relator of a July 17 meeting with a legislative hearing officer to address the nuisance problems on his property. At this meeting, the legislative hearing officer acknowledged that the only question concerning relator's intention to rehabilitate the property was how he would respond if prevented from building a four-unit dwelling on the property. Otherwise, the legislative hearing officer believed that relator intended to renovate the building on the property and gave him a week to apply for a code compliance inspection for that building. The legislative hearing officer indicated that if relator followed these instructions, he would recommend to the council at their next meeting that relator be given six additional months to renovate the property.

The city council met on July 22, 2001. No application for a code compliance inspection had been made. Relator was granted additional time to apply for the inspection. The city council next met on August 15, 2001. Again, no application for a code compliance inspection had been made. While relator admits that he never applied for the code compliance inspection, he argues that he sent a letter to his city council member on August 9, summarizing the matter and stating that he was prepared to take immediate remedial action. In that letter, relator went into great detail in describing his plans and renewed his request for the opportunity to rehabilitate the property as a four-unit dwelling. More importantly, relator's letter stated that he was willing to apply for the code compliance inspection immediately "so as to avoid any alleged defaults in his obligations on the property." On appeal, the city admits that the city council member received the letter before the next city council meeting. But at the August 15, 2001, meeting, that same city council member stated that he knew of no evidence that indicated relator was willing to rehabilitate the property. Relying on the city council member's statement, the city voted unanimously to have the nuisance on the property abated within 15 days after the meeting.

On certiorari review, relator argues that in light of the history of the property and representations that it could be developed as a four-unit dwelling, it was arbitrary, oppressive, and unreasonable for the city to order demolition of the property. Relator also argues that the record was incomplete because the city council refused to consider certain facts in their possession before it reached its decision to demolish the property. Finally, relator argues that the city's order must be set aside because it was based on proceedings that were unfair and irregular.

As part of a separate motion, the city moves this court to strike certain portions of relator's supplemental record, claiming that they were never presented to the city council and, thus, cannot be considered as

part of the record on appeal. Relator opposes this motion stating that each piece of information he provided in his supplement was submitted to members of the city council before the August 15, 2001 meeting. Therefore, he contends that the only reason this information was not mentioned at the city council meeting was that the council failed to acknowledge its existence.

## ISSUES

1. Is the information provided by relator in his supplemental record admissible as part of the record on appeal?

2. Was the city's determination arbitrary, oppressive, or unreasonable?

3. Was the record adequate for the city to make a proper determination?

4. Does the St. Paul City Code provide that a party in a nuisance-abatement proceeding is entitled to a separate, informal meeting with a legislative hearing officer before the official meeting?

## ANALYSIS

■ Decisions of administrative agencies, including cities, are presumed to be correct, and this court will reverse or modify an agency decision only if a party's substantial rights have been prejudiced because the decision exceeded the agency's statutory authority, was made upon unlawful procedure, was affected by other error of law, or was arbitrary or capricious. *See* Minn.Stat. § 14.69 (2000) (enumerating criteria for judicial review of agency decisions); *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.,* 624 N.W.2d 264, 277 (Minn.2001); *Hard Times Cafe, Inc. v. City of Minneapolis* 625 N.W.2d 165, 173 (Minn.App.2001) (applying principles of Minnesota Administrative Procedure Act to city councils). Review is limited to the evidence in the record, and the decision is upheld if the administrative action has a legal basis demonstrated by substantial evidence. *Cable Communications Bd. v. Nor–West Cable Communications P'shp,* 356 N.W.2d 658, 668 (Minn. 1984).

## I.

■ The city asks this court to strike several items in relator's supplemental record. The record in a certiorari appeal is composed of the papers, exhibits, and transcripts of any testimony considered by the decision-making body being reviewed. *See* Minn. R. Civ.App. P. 110.01; 115.04, subd. 1 (providing that rule 110 should apply to certiorari proceedings as far as is possible); *Stephens v. Bd. of Regents of the Univ. of Minn.,* 614 N.W.2d 764, 769 (Minn.App.2000), *review denied* (Minn. Sept. 26, 2000). On appeal, this court cannot base its decision on matters outside the record. *Stephens,* 614 N.W.2d at 769. As a result, a motion to strike materials that were not part of the appellate record will be granted. *Id.*

The city objects to the admission of the following: (1) a 1986 city zoning decision involving the subject property, which granted a zoning variance that allowed the property owner to build a four-unit dwelling on the subject property; (2) a 1999 city council resolution calling for rehabilitation or demolition of the property within six months; (3) a 2000 notice of sale and sale data form for tax-forfeited lands in Ramsey County listing the subject property as a "vacant 4 unit apartment building"; (4) a letter from the city to relator alerting him that an inspection of his property would occur on April 26, 2001; (5) a letter from relator to the city inspector acknowledging the receipt of the inspection notice; (6) a letter to the city explaining that even if relator files for a code compliance inspection, he does not want to waive any rights

to build a four-unit dwelling on the property; and (7) the August 9, 2001, letter sent to the city's vacant buildings supervisor, a Ramsey County attorney, and a St. Paul city councilman shortly before the city council hearing.

Relator argues in his response to the city's motion to strike that all of this information was before the city council when it rendered its decision and the motion should be denied.

> If anything material to either party is omitted from the record by error or accident or is misstated in it, * * * the appellate court, on motion by a party *or on its own initiative,* may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be approved and transmitted.

Minn. R. Civ.App. P. 110.05 (emphasis added); *Stanek v. A.P.I., Inc.,* 474 N.W.2d 829, 832 (Minn.App.1991), *review denied* (Minn. Oct. 31, 1991).

■ Here, relator did not file a separate motion to supplement the record as required by Minn. R. Civ.App. 127, but instead asks this court in his response to the city's motion to strike to allow his supplemental record in on the court's own initiative. There is no evidence in the record that the previous zoning resolution, nuisance resolution, or any information pertaining to the sale of the property at the auction was before the city council when it made its decision. Furthermore, there is no evidence in the record that this information had been provided to the council and was simply omitted or misstated. Also, the letters pertaining to the April 26, 2001, inspection of the property are not material to relator's appeal because neither side disputes that this inspection occurred. Therefore, the city's motion to strike is granted as to these items.

■ At oral argument, counsel for the city conceded that the city council member received the August 9 letter prior to the meeting on August 15. Counsel further admitted that city council members who receive such letters usually distribute copies to other members for consideration at their meeting; no copies of relator's letter were made or distributed. In fact, at the August 15 meeting, the city council member specifically denied the existence of the letter. Therefore, pursuant to this court's authority under Minn. R. Civ.App. P. 110.05, to the extent that it is material to relator's case, we deny the city's motion to strike relator's August 9, 2001, letter.

## II.

■ On certiorari review, this court will inspect the record and determine questions of jurisdiction of the tribunal, the regularity of the proceedings, and whether an order in a particular case is arbitrary, oppressive, unreasonable, fraudulent, made under an erroneous theory of law, or without evidentiary support. *Senior v. City of Edina,* 547 N.W.2d 411, 416 (Minn.App.1996). A decision may be deemed arbitrary and capricious only if: (1) it relied on factors not intended by the ordinance; (2) entirely failed to consider an important aspect of the issue; (3) offered an explanation that conflicts with the evidence; or (4) it is so implausible that it could not be explained as a difference in view or the result of the city's expertise. *Minnegasco v. Minn. Pub. Utils. Comm'n,* 529 N.W.2d 413, 418 (Minn.App.1995), *rev'd on other grounds,* 549 N.W.2d 904 (1996).

■ Relator first alleges that the city council's decision was arbitrary and capricious because of its timing and their refusal to assure him that if he were to begin renovations on the property, he would receive a zoning variance for the property.

To support his assertions, relator claims the city refused to cooperate with him toward achieving a resolution of the zoning misunderstanding, namely, the city did not indicate whether it would allow him to submit his code compliance inspection fee while reserving his rights concerning his ability to develop a four-unit dwelling. Relator contends that he has done everything short of paying the inspection fee to demonstrate his sincerity in renovating the property (i.e., paid property taxes, vacant building fees, etc.), and, instead of receiving assistance from the city, he accuses the city of engaging in strong-arm tactics forcing the demolition of his property. Relator believes that this demonstrates an arbitrary and capricious judgment on the part of the city, especially in light of the fact that the city had ample opportunity to demolish the property before his ownership and did not.

There is, however, no evidence that the city acted in an arbitrary and capricious manner by simply making the decision to demolish the property when it did. There is no legal support for the argument that, after giving a landowner the hearings guaranteed to him under the city code, a city must proactively cooperate with a landowner before it ultimately decides to remedy a nuisance property.[1] Under Minn. Stat. § 463.251 (2000), a city has the power to enact and enforce ordinances that address the problem of hazardous buildings. *City of Minneapolis v. Meldahl*, 607 N.W.2d 168, 171 (Minn.App.2000). Under the St. Paul City Code, the city council, after it determines that a property is a nuisance property, may take steps to abate the nuisance on its own if remedial action is not taken before any abatement deadline

it sets. St. Paul, Minn., Legislative Code § 45.11(1)(f) (2000). There is no section in the substantial abatement procedure section of the code requiring the city to consult further with the landowner about problems with the property before it decides to abate. When it resolved to abate the nuisance at the subject property on August 15, the city had already provided relator with a hearing with a legislative hearing officer and more than one opportunity to voice his concerns at a city council meeting. *See* St. Paul, Minn. Legislative Code § 45.11(3)-(4a) (stating that property owner is entitled to abatement hearing in front of city council and hearing with legislative hearing officer before city council hearing). Except with respect to the August 9 letter, relator's complaints, insofar as they demanded more cooperation from the city before it acted, are unpersuasive.

### III.

Relator next alleges that the city's decision was based on insufficient evidence. "If the record is incomplete, the court may either determine that the agency failed to prove substantial evidence supporting its decision or remand for further findings." *Meldahl*, 607 N.W.2d at 173. Relator contends that the city failed to consider the letter he sent on August 9, 2001, to his city council representative in which he expressly stated that he was prepared to submit payment for a code compliance inspection "so as to avoid any alleged defaults in his obligations on the property." He further posits that such a submission, had it been mentioned at the city council hearing by the council mem-

---

1. Relator cites no case law and provides no legal analysis for his arguments in this section of his brief. Minn. R. Civ.App. P. 128.02, subd. 1(d), provides that an appellate argument must be accompanied by citations to relevant authority and analysis. *See Stephens*, 614 N.W.2d at 769 (stating that request to strike portions of record must be denied because no relevant case law or legal analysis is provided in support of argument).

ber, would have demonstrated that he was ready to take remedial action on the property and likely would have done so before the 15–day deadline. Thus, relator concludes that the city council would have been required to suspend any order to demolish the property. *See* St. Paul, Minn., Legislative Code § 45.11(1)(f) (stating that city can abate nuisance if *remedial action is not taken* by property owner before abatement deadline). We agree. Because we believe that the letter should have been part of the record, and because the city council member failed to acknowledge the content of the letter, the council's decision failed to consider an important aspect of the problem and was, therefore, arbitrary and capricious. *See Minnegasco,* 529 N.W.2d at 418 (stating that council acts in arbitrary and capricious manner when failing to consider an important aspect of the problem).

### IV.

 Relator's final argument on appeal is that he was denied due process because he was not provided an opportunity to meet privately with the legislative hearing officer before the first public hearing concerning the status of his property. Relator asserts that under the code's substantial abatement procedures, he should have been provided with an informal meeting with the legislative hearing officer before their formal meeting on July 17, 2001. For abatement proceedings, the code provides that

> [i]f the remedial action is not taken within the time specified in the written order, the enforcement officer will notify the city council * * * [and] fix a date for an abatement hearing for the city council.

St. Paul, Minn., Legislative Code § 45.11(3). The code states further:

> Prior to the hearing, the legislative hearing officer * * * shall provide the appellant with an opportunity to meet and informally discuss the matter. The legislative hearing officer may submit to the council a recommendation based on the information obtained at such a meeting.

St. Paul, Minn., Legislative Code § 45.11(4a). Relator appears to have mistakenly assumed that the "hearing" referred to in section 45.11(4a) is the hearing with the legislative officer.

 In every other instance in section 45.11 when a hearing is mentioned, it is in reference to the city council hearing. In section 45.11(3), entitled "Setting the Hearing Date," the hearing to which the code refers is the city council hearing. St. Paul, Minn., Legislative Code § 45.11(3) ("enforcement officer * * * shall fix a date for an abatement hearing for the city council"). In section 45.11(5), entitled "Hearing," the code mentions only the city council hearing on abatement. When interpreting statutes, courts should not define each word in isolation, but rather in the context of other provisions in the statute. *State v. Taylor,* 594 N.W.2d 533, 535 (Minn.App.1999). A more complete reading of this part of the code indicates that relator's argument is based on a misinterpretation of the language in the St. Paul City Code. The "hearing" referred to in section 45.11(4a) is the city council hearing and the informal meeting with the legislative hearing officer is the meeting that took place on July 17, 2001. Because this part of the code is clearly referring to city council hearings when it uses the word "hearing," section 45.11(4a) does not confer on relator the opportunity to a private meeting with the legislative hearing officer before he met with the officer on July 17, 2001. Therefore, the city acted in compliance with the code when it provided relator with only an informal meeting with the legislative hearing officer on July 17, 2001, and a hearing before the city council on August 15, 2001.

## DECISION

Because a council member received relator's August 9, 2001, letter addressing the status of his remedial plans for the property, before the council's August 15 meeting, we conclude that the letter should have been considered by the city. The city's failure to consider the letter before rendering its decision amounts to an arbitrary and capricious act. We reverse and remand for further hearings that acknowledge relator's letter and its statement of his intent to take remedial action.

**Reversed and remanded; motion to strike granted in part and denied in part.**