*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1893**

BVA Equities, LLC,
Relator,

vs.

City of New Hope,
Respondent.

**Filed July 28, 2014
Affirmed
Bjorkman, Judge**

City of New Hope
File No. 13-114

James M. Susag, Susan E. Tegt, Larkin Hoffman Daly & Lindgren Ltd., Minneapolis, Minnesota (for relator)

Mary D. Tietjen, James J. Thomson, Kennedy & Graven, Chartered, Minneapolis, Minnesota (for respondent)

Considered and decided by Bjorkman, Presiding Judge; Ross, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Relator property owner challenges the denial of its application for a well-drilling permit, arguing that respondent city erroneously interpreted its well-drilling ordinance. We affirm.

## FACTS

Relator BVA Equities, LLC is a Minnesota company that owns a 24-unit apartment complex in New Hope (the property). The building was constructed under a building permit issued in 1972, and the property has access to the municipal water supply.

In June 2013, BVA applied to respondent City of New Hope for a permit to drill a well on the property, indicating that it intends to use the well for lawn irrigation. The city denied the permit, relying on its well-drilling ordinance, New Hope, Minn., Code of Ordinances (N.H.C.O.) § 3-1(a)(2) (2014), which prohibits issuance of a well-drilling permit when a proposed new well "is to be drilled to serve new building construction" in a location where municipal water is available. The city reasoned that the apartment building on the property is "new construction" under the general provisions of the city code.

BVA sought a public hearing to appeal the city's decision. BVA argued that the phrase "new building construction" refers to "a building that is being newly constructed," not a pre-existing building such as the apartment building on the property. BVA also argued that the proposed well is intended to serve the landscaping on the property, not the building. After a public evidentiary hearing, the city again denied the permit. This certiorari appeal follows.

## D E C I S I O N

On certiorari review of a city's quasi-judicial decision, we will reverse or modify the decision "only if a party's substantial rights have been prejudiced because the

decision exceeded the agency's statutory authority, was made upon unlawful procedure, was affected by other error of law, or was arbitrary or capricious." *Rostamkhani v. City of St. Paul*, 645 N.W.2d 479, 483 (Minn. App. 2002). Our review is "limited to the evidence in the record," and we will uphold a city's decision so long as it has "a legal basis demonstrated by substantial evidence." *Id.*

BVA principally challenges the city's interpretation of its well-drilling ordinance. We review de novo a city's interpretation of an ordinance, applying the same rules that govern statutory interpretation. *Eagle Lake of Becker Cnty. Lake Ass'n v. Becker Cnty. Bd. of Comm'rs*, 738 N.W.2d 788, 792 (Minn. App. 2007). The object of statutory interpretation is to ascertain and effectuate the intention of the legislature. Minn. Stat. § 645.16 (2012). "To determine the meaning of a statute, we look first and foremost to the language of the statute itself." *Occhino v. Grover*, 640 N.W.2d 357, 359 (Minn. App. 2002), *review denied* (Minn. May 28, 2002). Accordingly, when the legislature defines a term or phrase, that definition controls. *See* Minn. Stat. § 645.08 (2012); *State v. Leathers*, 799 N.W.2d 606, 609 (Minn. 2011). We construe undefined words and phrases according to their common and approved usage. *See Urban ex. rel. Urban v. Am. Legion Post 184*, 695 N.W.2d 153, 159 (Minn. App. 2005), *aff'd*, 723 N.W.2d 1 (2006); *see also Occhino*, 640 N.W.2d at 359 (stating that reliance on plain meaning of statutory words "presupposes the ordinary usage of words that are not technically used or statutorily defined"). When the text of a law is unambiguous, we apply the plain meaning of the statutory language without engaging in any further construction. *State v. Barrientos*, 837 N.W.2d 294, 298 (Minn. 2013).

At issue here is whether the proposed well would "serve new building construction." *See* N.H.C.O. § 3-1(a)(2)a. The well-drilling ordinance does not define the phrase "new building construction." BVA argues that the apartment building is not "new building construction" because it "received a building permit and certificate of occupancy over forty years ago." Absent any other indication in the code as to what the city means by "new," BVA's interpretation might be reasonable. *See The American Heritage Dictionary* 1186 (5th ed. 2011) (defining "new" as "[h]aving been made or come into being only a short time ago" or "[d]ifferent from the former or the old"). That is not the case here. The general code provisions define "new construction" as any "*building* or structure constructed under a building permit issued after April 21, 1960." N.H.C.O. § 1-2 (emphasis added). Because "new construction" encompasses "new *building* construction," and the apartment building on the property was built after 1960, it is "new building construction."

BVA contends that the city erred by relying on the definition of "new construction" in interpreting the phrase "new building construction." We disagree. The definition of "new construction" applies to all provisions of the code unless it directly conflicts with a specific definition provided in a particular context. N.H.C.O. §§ 1-2, 1-3(b). The code does not offer any other, let alone a conflicting, definition for the phrase "new building construction." Because the city clearly defined the phrase, we will apply that definition without resorting to further construction. *See Barrientos*, 837 N.W.2d at 298; *Leathers*, 799 N.W.2d at 609.

4

BVA also asserts that the proposed well would serve landscaping needs, not the apartment building, and therefore is not subject to the limitation in the well-drilling ordinance. We are not persuaded. BVA's suggestion that we should divorce landscaping from the building it enhances is a tenuous proposition, at best. And here, where BVA acknowledges that improving the landscaping is part of its plan to attract renters to its apartment building, such a proposition is contrary to the record evidence.

Finally, BVA argues that the city acted arbitrarily and capriciously in denying its request for a well-drilling permit because the city failed to consider the effect that its interpretation would have on the drilling of any new wells in the future and relied on factors not intended at the time the well-drilling ordinance was drafted. *See Rostamkhani*, 645 N.W.2d at 484 (stating that a decision is arbitrary and capricious if it relies on factors not intended by the ordinance or entirely fails to consider an important aspect of the issue). Both arguments are belied by the uncontroverted evidence that the city adopted the current version of the well-drilling ordinance precisely because it did not want any new wells to be drilled, reasoning that requiring property owners to rely exclusively on the municipal water supply would protect the groundwater. The city's policy decision may supplement or even duplicate other groundwater protections, as BVA asserts, but it is not arbitrary, capricious, or absurd.

In sum, we conclude that the city's determination that the proposed well would "serve new building construction" finds ample support in the law and the record. Accordingly, the city did not err by denying BVA's request for a well-drilling permit.

**Affirmed.**