*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1487**

Kasele Howard,
Relator,

vs.

Family First Home Care, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed April 11, 2016
Affirmed
Kirk, Judge**

Department of Employment and Economic Development
File No. 33700941-3

Kasele Howard, Minneapolis, Minnesota (pro se relator)

Family First Home Care, Inc., St. Paul, Minnesota (respondent)

Lee B. Nelson, Tim Schepers, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Kirk, Presiding Judge; Peterson, Judge; and Jesson, Judge.

UNPUBLISHED OPINION

**KIRK**, Judge

Relator challenges an unemployment-law judge's (ULJ) decision that she is ineligible for unemployment benefits, arguing, in part, that the evidentiary hearing was unfair. We affirm.

## FACTS

Respondent Minnesota Department of Employment and Economic Development (DEED) denied relator Kasele Howard's request for unemployment benefits following her separation from employment with respondent Family First Home Care, Inc. (FFHC). Relator appealed that determination, and a ULJ conducted an evidentiary hearing via telephone conference.

The ULJ found that relator quit her employment for a reason that did not satisfy an exception to ineligibility, and, therefore, she was ineligible for benefits. She requested reconsideration. At relator's request, the chief ULJ reassigned the case to another ULJ for independent review. The second ULJ issued a decision affirming the first ULJ's decision. Relator petitioned for and received a writ of certiorari for review by this court. *See* Minn. Stat. § 268.105, subd. 7(a) (Supp. 2015); Minn. R. Civ. App. P. 115.

FFHC provides personal care attendant (PCA) services. Relator and her sister, E.D., both used FFHC's services to care for their children. In September 2014, FFHC employed relator as a PCA. She worked as a PCA for E.D.'s son, J.D. Jr. E.D.'s husband was a PCA for relator's daughter.

Relator's last day of employment by FFHC was May 15, 2015. Relator and P.D., the owner of FFHC, presented differing testimony about the separation. However, it is undisputed that, on May 2, 2015, relator sent a text message to P.D. stating that she was no longer J.D. Jr.'s PCA as of that date, and asking that P.D. change her daughter's PCA to relator's stepson.

Relator testified as follows. She and E.D. agreed that she would no longer serve as J.D. Jr.'s PCA. Relator changed her daughter's PCA because E.D. and her husband were too busy with other employment. In April, relator told P.D. that her last day with her nephew would be May 2, and asked P.D. for work on Mondays and Fridays. He said there was none available. P.D. asked relator to continue serving as her nephew's PCA until May 15, and relator agreed. Relator's husband testified that he heard relator ask P.D. for work several times.

P.D. testified that he first learned that relator would no longer be serving as her nephew's PCA from her text message on May 2. Relator told him that she decided to quit working as a PCA for her nephew, and discontinued having E.D.'s husband as her daughter's PCA, due to an argument between relator and E.D. P.D. testified that relator did not request further work from him. FFHC's receptionist testified that relator did not ask for additional work when she came to see P.D.

It is undisputed that, on June 1, P.D. sent relator a text message informing her that a new assignment was available for her. Relator declined this offer, asking why he had not given her an assignment for Mondays and Fridays when she had asked. She also directed him to stop contacting her.

3

## D E C I S I O N

**I.    The ULJ did not err in finding that relator quit her employment without a good reason caused by FFHC.**

When considering an unemployment decision on writ of certiorari, we review the ULJ's decision on reconsideration. Minn. Stat. § 268.105, subd. 7(a). We may remand, reverse, or modify the ULJ's decision denying benefits when the ULJ's findings, inferences, conclusions, or decision are affected by an error of law, unsupported by substantial evidence in view of the entire record, or arbitrary or capricious. Minn. Stat. § 268.105, subd. 7(d) (Supp. 2015). This court reviews the ULJ's factual findings in the light most favorable to the decision and defers to the ULJ's credibility determinations. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006).

A person who quits employment is disqualified from receiving unemployment benefits unless a statutory exception applies, including, as pertinent here, "a good reason caused by the employer." Minn. Stat. § 268.095, subd. 1 (2014). A quit "occurs when the decision to end the employment was, at the time the employment ended, the employee's." *Id.*, subd. 2(a) (2014). A discharge occurs "when any words or actions by an employer would lead a reasonable employee to believe that the employer will no longer allow the employee to work for the employer in any capacity." *Id.*, subd. 5(a) (2014).

Generally, "[w]hether an employee has been discharged or voluntarily quit is a question of fact." *Midland Elec., Inc. v. Johnson*, 372 N.W.2d 810, 812 (Minn. App. 1985). We "will not disturb the ULJ's factual findings when the evidence substantially sustains them." *Peterson v. Nw. Airlines, Inc.*, 753 N.W.2d 771, 774 (Minn. App. 2008), *review*

4

*denied* (Minn. Oct. 1, 2008). "The issue of whether an employee had good reason to quit is a question of law reviewed de novo." *Peppi v. Phyllis Wheatley Cmty. Ctr.*, 614 N.W.2d 750, 752 (Minn. App. 2000).

Relator essentially argues that the ULJ should have credited her testimony over that of FFHC's witnesses. She repeatedly references two audio CDs that were not part of the record before the ULJ, and are not part of the appellate file. Because any audio recording possessed by relator was not presented to the ULJ, it is outside the record on appeal, and this court cannot consider it. *See* Minn. R. Civ. App. P. 110.01, 115.04, subd. 1 (providing that rule 110 should apply to certiorari proceedings as far as is possible); *Rostamkhani v. City of St. Paul*, 645 N.W.2d 479, 483 (Minn. App. 2002) ("The record in a certiorari appeal is composed of the papers, exhibits, and transcripts of any testimony considered by the decision-making body being reviewed.").

"When the credibility of a witness testifying in a hearing has a significant effect on the outcome of a decision, the unemployment law judge must set out the reason for crediting or discrediting that testimony." Minn. Stat. § 268.105, subd. 1a(a) (2014). The second ULJ thoroughly explained his credibility determinations, stating that P.D.'s testimony was "straight-forward and plausible," the receptionist "did not appear to take any sides in the debate between the parties," and relator's testimony was "implausible, riddled with contradictions, and simply not credible."

In finding that relator's testimony lacked credibility, the ULJ specifically cited numerous inconsistencies within relator's testimony and between her testimony and other evidence in the record. For instance, relator initially testified that E.D. informed her in

April that she was going to be replaced on May 2 because E.D. had found a new PCA, but later claimed that she worked until May 15 because E.D. needed additional time to find a new PCA, and it was doubtful that, absent a disagreement between the two sisters, relator's decision to change PCAs for her daughter would occur simultaneously with E.D.'s termination of her PCA work. The ULJ's findings are supported by substantial evidence. *See Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 532-33 (Minn. App. 2007) (stating that the ULJ's credibility findings are upheld when they are supported by substantial evidence).

Further, we note that relator's focus on what occurred between relator and E.D. is misplaced. The ULJ's decision turned on whether *FFHC* discharged relator from employment or *FFHC* created a condition making it reasonable for relator to quit her employment at that time. Minn. Stat. § 268.095, subd. 1. Considering the ULJ's factual findings in the light most favorable to his decision and deferring to his credibility determinations, the ULJ did not err in finding that relator quit her employment without a good reason caused by FFHC. *Skarhus*, 721 N.W.2d at 344.

## II.    Relator received a fair hearing.

Relator also argues that the evidentiary hearing was unfair because the first ULJ was biased against her, did not allow relator's husband to participate in the entire hearing, and should not have allowed the receptionist to participate. Relator describes the first ULJ as "agitated" and "uninterested" in hearing her case. She asserts that the ULJ repeatedly interrupted her and refused to receive her evidence.

6

A ULJ "must ensure that all relevant facts are clearly and fully developed," and "assist all parties in the presentation of evidence." Minn. R. 3310.2921 (2015). "All competent, relevant, and material evidence, including records and documents in the possession of the parties that are offered into evidence, are part of the hearing record." Minn. R. 3310.2922 (2015). The ULJ may receive "any evidence that possesses probative value" but "may exclude any evidence that is irrelevant, immaterial, unreliable, or unduly repetitious." *Id.* "Evidentiary rulings in administrative proceedings are subject to an abuse-of-discretion standard." *CUP Foods, Inc. v. City of Minneapolis*, 633 N.W.2d 557, 566 (Minn. App. 2001), *review denied* (Minn. Nov. 13, 2001).

The record reflects that the ULJ provided relator with a fair hearing. She heard all witnesses proposed by both sides in advance of the hearing, actively questioned all witnesses, and allowed the introduction of exhibits from and cross-examination by both parties. The ULJ's questions during the hearing demonstrate that she was fully engaged in the process and inquired about the relevant issues. Relator does not specifically identify evidence that the ULJ prevented her from presenting.

With respect to relator's husband, near the outset of the hearing, the ULJ told relator that the ULJ would contact him when it was his turn to testify, and relator agreed. Relator identified no prejudice from his lack of earlier participation in the hearing. The record reflects that the receptionist provided relevant testimony, and that, unlike relator's husband, she participated throughout the hearing because she was present at the beginning of the phone conference.

7

After a thorough review of the record, we conclude that the ULJ did not abuse her discretion in making evidentiary rulings or otherwise err in presiding in this matter. Notably, a second ULJ reviewed relator's case following her request for reconsideration, and that is the decision on review, lessening the effect of any potential bias. *See* Minn. Stat. § 268.105, subd. 7(a).

**Affirmed.**