Richard OCCHINO, Appellant,

v.

Russell GROVER, Respondent.

No. C6–01–1216.

Court of Appeals of Minnesota.

March 12, 2002.

Peter James Nickitas, Attorney at Law, St. Paul, for appellant.

Mark C. Jennings, Attorney at Law, Duluth, for respondent.

Considered and decided by HANSON, Presiding Judge, LANSING, Judge, and KALITOWSKI, Judge.

## OPINION

LANSING, Judge.

The district court granted summary judgment in favor of Russell Grover, holding that Minn.Stat. § 504B.255 (2000) did not require Grover to provide a one-year notice before terminating Richard Occhino's Section 8 tenancy. Occhino appeals, and, because we conclude that the district court properly applied the statute, we affirm.

## FACTS

Richard Occhino is disabled by epilepsy and has received social-security disability

income since 1969. His limited income qualifies him for tenant-based government-housing assistance under Section 8 of the United States Housing Act of 1937, as amended by the Housing and Community Development Act of 1974. *See* 42 U.S.C. § 1437f (1994 & Supp. V 1999). Section 8 provides rental assistance that is "project-based" or "tenant-based." In project-based programs, rental assistance is available to tenants who live in specific housing developments or units. 42 U.S.C. § 1437f(f)(6) (Supp. V 1999). With tenant-based assistance, the unit is selected by the tenant, who may rent anywhere a housing authority provides a certificate or voucher program. *Id.* (7) (Supp. V 1999).

From 1971 to 1999, Occhino rented the upstairs of a duplex at 509 North Second Avenue, in Duluth, Minnesota. Under the terms of his most recent lease, Occhino paid $159 monthly for rent, and the housing assistance program paid $266. In June 1999, Occhino's landlord sold the building to Russell Grover. In September 1999, Grover notified Occhino that he intended to renovate the building and increase the rent to an amount not permitted under the housing assistance program. Grover also notified Occhino that he must vacate the premises by October 31, 1999. Occhino complied, but brought this action for compensatory damages, alleging failure to provide adequate notice and unlawful discrimination based on receipt of public assistance.

The district court determined that the one-year notice requirement in Minn.Stat. § 504B.255 did not apply to Occhino's tenancy and granted summary judgment on that claim. Occhino voluntarily dismissed his discrimination claim and brought this appeal.

## ISSUE

Do the notice requirements of Minn. Stat. § 504B.255 apply to tenants who receive tenant-based Section 8 housing assistance?

## ANALYSIS

■ On appeal from a summary judgment based on the application of statutory language to undisputed facts, we exercise independent review to determine whether the district court erred in applying the statute. *Oslund v. Johnson,* 578 N.W.2d 353, 356 (Minn.1998). Occhino and Grover do not dispute that our review is de novo, but they strongly dispute the applicability and priority of the canons that determine the meaning of statutes. A brief overview is, therefore, helpful.

■ To determine the meaning of a statute, we look first and foremost to the language of the statute itself. *See* Minn. Stat. § 645.16 (2000) (setting forth plain-meaning rule). If, on its face and as applied to the facts, a statute's meaning is plain, judicial construction is neither necessary nor proper. *Am. Tower, L.P. v. City of Grant,* 636 N.W.2d 309, 312 (Minn.2001) (addressing facial or patent meaning); *State v. Herbert,* 601 N.W.2d 210, 212 (Minn.App.1999) (addressing applied or latent meaning).

■ Plain meaning presupposes the ordinary usage of words that are not technically used or statutorily defined, relies on accepted punctuation and syntax, and draws from the full-act context of the statutory provision. *Am. Tower,* 636 N.W.2d at 312 (words and phrases carry plain and ordinary meaning); *Amaral v. St. Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn.1999) (rules of grammar apply to determine meaning); *Glen Paul Court Neighborhood Ass'n v. Paster,* 437 N.W.2d 52, 56 (Minn. 1989) (sections of the statute must be read together to give words their plain meaning); *see also* William N. Eskridge, Jr. &

Philip P. Frickey, *Foreword: Law as Equilibrium*, 108 Harv. L.Rev. 26, 97–108 (1994) (dividing canons into three categories: (1) textual or plain meaning canons, which include conventions of grammar and syntax, ordinary usage, and whole-act structure, (2) extrinsic source canons, which include legislative sources, agency interpretation, and continuity principles, and (3) substantive policy canons, which include constitution-based, statute-based, and common law-based canons).

■ Although plain meaning is the governing principle in applying all statutory language, Minnesota courts will not give effect to plain meaning if it produces an absurd result or an unreasonable result that is plainly at variance with the policy of the legislation as a whole. *Olson v. Ford Motor Co.*, 558 N.W.2d 491, 494 (Minn. 1997); *Wegener v. Comm'r of Revenue*, 505 N.W.2d 612, 617 (Minn.1993).

■ If the meaning of statutory language is not plain, courts resolve ambiguity by looking to legislative intent, agency interpretation, and principles of continuity which include consistency with laws on the same or similar subjects. *See* Minn.Stat. § 645.16 (2000); Eskridge & Frickey, *supra*, at 99–101 (grouping legislative intent, agency interpretation, and continuity principles as extrinsic-source canons that resolve ambiguity but do not trump textual meaning). The test for ambiguity is whether the statutory language has more than one reasonable interpretation. *Tuma v. Comm'r of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn.1986).

■ Courts also look to substantive-policy canons that specifically relate to the subject matter or the textual structure of the legislation. The substantive-policy canons include constitution-based canons that create a presumption against unconstitutional meanings, statutory-based

canons that include restrictions on the interpretation of statutory exemptions and restrictions on the effects of repeal, and common law-based canons that include principles strictly interpreting statutes in derogation of the common law and strictly interpreting penal laws. *See* Minn.Stat. §§ 645.17(3) ("legislature does not intend to violate the constitution"), .19 ("[e]xceptions expressed in a law shall be construed to exclude all others"), .34–.43 (2000) (relating to repeal); *Whitener v. Dahl*, 625 N.W.2d 827, 829 (Minn.2001) (statutes in derogation of common law must be strictly construed); *State v. Soto*, 378 N.W.2d 625, 627–28 (Minn.1985) (penal statutes must be strictly construed).

■ The statute at issue requires the landlord of federally subsidized rental housing to provide residential tenants a one-year notice under specified conditions:

The landlord of federally subsidized rental housing must give residential tenants of federally subsidized rental housing a one-year written notice under the following conditions:

(1) a federal section 8 contract will expire;

(2) the landlord will exercise the option to terminate or not renew a federal section 8 contract and mortgage;

(3) the landlord will prepay a mortgage and the prepayment will result in the termination of any federal use restrictions that apply to the housing; or

(4) the landlord will terminate a housing subsidy program.

The notice shall be provided at the commencement of the lease if the lease commences less than one year before any of the conditions in clauses (1) to (4) apply.

Minn.Stat. § 504B.255 (2000).

Occhino contends that the plain language of subsections (1) and (4) required

Grover to give him a one-year notice before terminating his tenancy. Grover contends that the statutory notice does not apply to Occhino's tenancy because he is not a tenant of "federally subsidized rental housing" within the technical meaning of that phrase. The statute does not define the phrase "federally subsidized rental housing."

Grover maintains that "federally subsidized rental housing" is a technical phrase that applies only to project-based Section 8 subsidies and not to tenant-based subsidies. His support for this argument is minimal. Grover does not contend that the underlying federal statute uses the term in a technical fashion. Instead, he relies on a letter written by the general counsel of the Minnesota State Office of Housing and Urban Development in response to a different set of circumstances. The letter provides no basis for Grover's argument other than the writer's opinion that "federally subsidized rental housing" applies only to a multifamily, project-based Section 8 contract.

In the absence of a statutory definition or technical terminology, the plain meaning of words and phrases is determined by their common and approved usage. The common and approved usage of the phrase "federally subsidized rental housing," together with accepted rules of grammar, tends to support Grover's argument that the one-year termination applies to project-based rather than tenant-based assistance. By referring to "the landlord of federally subsidized rental housing" and "tenants of federally subsidized rental housing," the statute uses the term "federally subsidized" to modify the noun "housing." A straight-forward parsing of this phrase supports an argument that a project-based subsidy more likely satisfies the meaning of "federally subsidized rental housing" than a tenant-based subsidy. In

other words, although Occhino may receive housing through a federal subsidy, it is his rent that is federally subsidized, rather than the housing itself.

The context of the statutory provision or the plain meaning within the whole act further supports a reading that would not apply the one-year notice provision to tenant-based subsidies. Subsections (2) and (3) refer to mortgages, which would not be relevant to a tenant-based subsidy, and even subsections (1) and (4) suggest that the section relates to a contract or program that is more comprehensive than one lease providing a subsidy for one eligible tenant.

In refutation of a plain meaning that would exclude his tenancy from the one-year notice, Occhino argues that the statute is at least ambiguous because an earlier St. Louis County district court opinion held that the one-year notice applied to a tenant-based subsidy. *Douglas v. Sparby,* No. C8–96–601471 (Minn.Dist.Ct. Sept. 10, 1996). We are not convinced that *Douglas v. Sparby* addressed the same legal issue. But even if we accepted Occhino's argument that the statute is ambiguous because it is subject to more than one reasonable interpretation, we conclude, for the following reasons, that principles of statutory construction that apply to resolving ambiguity would produce the same result.

First, we reject Occhino's and Grover's arguments that a footnote near the end of subsection (2), referencing 42 U.S.C.A. § 1437f, should affect judicial construction of the statute. Although the footnote appears in West's Minnesota Statutes Annotated, it does not appear in either the session laws or in the Minnesota Statutes published by the revisor's office. *Compare* Minn.Stat. Ann. § 504B.255 (West Supp.2001), *with* 1999 Minn. Laws ch. 199, art. 1, § 32, *and* Minn.Stat.

§ 504B.255 (2000). The reference appears to have been inserted by West as an aid to readers to identify the source of Section 8. But it is the session laws and the revisor's version of Minnesota Statutes that contain the official text of a statute. *See* Minn. Stat. § 3C.13 (legal status of statutes). Thus, we ascribe no significance to the placement of the footnote in Minnesota Statutes Annotated.

We do attach significance, however, to the fact that section 504B.255 is derived from 42 U.S.C. § 1437f. Neither Occhino nor Grover argue that the federal statute preempts the state law, and the federal statute specifically provides that if the tenant in question is receiving federal housing assistance that is not project based, any landlord terminating a lease is only required to give notice that conforms to the time requirements of state landlord-tenant law. *See* 42 U.S.C. § 1437f(*o*)(7) (Supp. V 1999). But the statute contains a provision comparable to section 504B.255 that requires a one-year termination notice under specified conditions. 42 U.S.C. § 1437f(c)(8)(A) (Supp. V 1999). Unlike section 504B.255, however, the federal provision specifically exempts contracts for tenant-based assistance. *Id.*

We recognize that a state could enact legislation that is intended to extend or expand the notice rights available under federal law. *See California Leads the Way: First State to Provide Nonproject–Based Section 8 Tenants a 90–Day Notice of Contract Termination,* 30 Housing L. Bull. 28 (Feb.2000). But nothing in the enactment of section 504B.255 suggests that Minnesota intended to provide such a significant change from the federal provisions.

Section 504B.255 came into effect in July 1999 as part of a larger housing bill, the main purpose of which was to consolidate, clarify, and recodify the majority of Minnesota's housing statutes under one chapter. *Hearing on S.F. No. 2232 Before the Senate Comm. on Jobs, Housing and Cmty. Dev.* (May 3, 1999) (statement of Sen. Higgins). When the bill was discussed in both House and Senate committees, it was made clear that no substantive changes to the current housing laws were intended. *Id.; Hearing on H.F. 2425 Before the House Comm. on Civil Law* (May 3, 1999) (statement of Rep. Dawkins). Therefore, section 504B.255 is simply a renumbering of the original Minnesota notice statute for section 8 housing, which was Minn.Stat. § 504.32 (1998). Section 504.32 was originally passed in 1989 as a small part of a larger housing bill in Minnesota. 1989 Minn. Laws ch. 328, art. 2, § 6. The language of section 504.32 is nearly identical to that of section 504B.255 and, again, suggests no major divergence from existing law.

Construing section 504B.255 to apply to project-based subsidies rather than tenant-based subsidies is also consistent with Occhino's lease. The lease is a form lease provided by the U.S. Department of Housing and Urban Development and provides that after the first year of tenancy, the lease continues on a month-to-month basis. The lease requires notice of termination equivalent to the payment period, which in Occhino's case is the one-month notice that he received.

We conclude that, by its plain meaning, the one-year termination notice required by section 504B.255 does not apply to tenants who receive tenant-based assistance under the Section 8 certificate and voucher program. And even if we accepted Occhino's argument that the statute is ambiguous, a reasonable statutory construction would exclude tenants who receive tenant-based assistance from its scope.

Grover requests taxation of costs, disbursements, and attorneys' fees. A proper

request may be submitted for consideration under Minn. R. Civ.App. P. 139.

**DECISION**

Because Occhino received tenant-based rather than project-based rental assistance, the district court correctly concluded that he was not entitled to a one-year termination notice under Minn.Stat. § 504B.255.

**Affirmed.**