*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2337**

Greg Peterson,
Relator,

vs.

Richfield Civil Service Commission, et al.,
Respondents.

**Filed August 4, 2014
Affirmed
Bjorkman, Judge**

Richfield Civil Service Commission

Erik F. Hansen, Burns & Hansen, P.A., Minneapolis, Minnesota (for relator)

Julie Fleming-Wolfe, St. Paul, Minnesota (for respondents)

Considered and decided by Ross, Presiding Judge; Bjorkman, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Relator police officer challenges respondent city civil service commission's certification of its police detective promotional eligible register. Relator argues that respondent violated Minn. Stat. § 419.06 (2012) by failing to consider records of efficiency, character, conduct, and seniority when creating the register. We affirm.

**FACTS**

In July 2013, respondent Richfield Civil Service Commission approved a new police detective promotional process, which includes a 100-question written test prepared by a testing agency (comprising 40% of each candidate's score) and an oral interview (comprising 60% of each candidate's score). The Richfield Police Department thereafter solicited applications for a police detective position.

Relator Greg Peterson and four other officers applied for the position. They first completed the written test, which the police department submitted to the testing agency for grading. The agency prepared a report indicating the number of questions each candidate answered correctly. The candidates then participated in oral interviews with four representatives from police command and human resources. Each candidate was asked to: (1) articulate the three most important values he will demonstrate as an investigator and provide examples of him demonstrating each one in working for the police department; (2) explain what supervisors or co-workers would say about his investigative style, investigative strengths, investigative weaknesses, and the strength of his candidacy; (3) explain what he did "to prepare [him]self for the position," including formal education, volunteer work, or participation in extra duties or special assignments; (4) articulate the most difficult issues he will face as a detective; (5) give an example of a time he had to take charge of a crime scene and give direction to other officers to accomplish department goals; (6) articulate the primary responsibilities of a detective; (7) explain his reasons for seeking the detective position; (8) articulate ways he can "enhance the position of Detective"; (9) give examples of working cooperatively with

2

other law-enforcement officers and explain his own contribution to the group's success; and (10) describe a time when a supervisor criticized his work and his reaction to the criticism. The interviewers scored the candidate's responses on a scale of 1 to 10 and made written comments.

The candidates were ranked based on their weighted scores; Peterson was ranked fourth out of the five candidates. The commission certified the promotional eligible register with the candidates in ranked order. This certiorari appeal follows.

# D E C I S I O N

A commission's approval of a promotional eligible register is a quasi-judicial decision reviewable by certiorari. *See Cnty. of Washington v. City of Oak Park Heights*, 818 N.W.2d 533, 539 (Minn. 2012); *Bahr v. City of Litchfield*, 420 N.W.2d 604, 606 (Minn. 1988). Certiorari review is limited to "questions affecting the jurisdiction of the [commission], the regularity of its proceedings, and, as to merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it." *Dietz v. Dodge Cnty.*, 487 N.W.2d 237, 239 (Minn. 1992) (quotation omitted). We will not disturb a discretionary police-promotion decision "made pursuant to [the] directions" of the police civil-service law "absent proof of fraudulent, arbitrary, or unreasonable actions by the commission." *Anderson v. Police Civil Serv. Comm'n*, 414 N.W.2d 389, 391 (Minn. 1987).

The police civil-service law affords a commission "absolute control and supervision over the employment, promotion, discharge, and suspension of all [police]

3

officers." Minn. Stat. § 419.05 (2012). In exercising that control, however, a commission is required to "promote efficiency in the police department service and to carry out the purposes of [the police civil-service law].["1] Minn. Stat. § 419.06. And its promotional decisions must be "based on competitive examination and upon records of efficiency, character, conduct and seniority." Minn. Stat. § 419.06(9).

The parties dispute what it means to base promotional decisions on "*records* of efficiency, character, conduct and seniority." *Id.* (emphasis added). We interpret this statutory language de novo. *See Flaherty v. Indep. Sch. Dist. No. 2144*, 577 N.W.2d 229, 233 (Minn. App. 1998), *review denied* (Minn. June 17, 1998). In doing so, our goal "is to ascertain and give effect to the intention of the legislature." *Greene v. Comm'r of Minn. Dep't of Human Servs.*, 755 N.W.2d 713, 721 (Minn. 2008). "To determine the meaning of a statute, we look first and foremost to the language of the statute itself." *Occhino v. Grover*, 640 N.W.2d 357, 359 (Minn. App. 2002), *review denied* (Minn. May 28, 2002). When statutory words and phrases are undefined, we construe them according to their common and approved usage. *See Urban ex. rel. Urban v. Am. Legion Post 184*, 695 N.W.2d 153, 159 (Minn. App. 2005), *aff'd*, 723 N.W.2d 1 (2006). But we also take the statute's structure and context into account. Minn. Stat. § 645.08(1) (2012); *Occhino*, 640 N.W.2d at 359. If statutory language is clear on its face, we engage in no further

---

[1] While Minn. Stat. § 419.06 directs civil-service commissions to adopt rules to effectuate the stated goals, a civil-service commission complies with Minn. Stat. § 419.06 if the promotional process it actually employs is consistent with the statute's directions. *See Anderson*, 414 N.W.2d at 391-92.

statutory construction and apply the statute's plain meaning. *Carlson v. Dep't of Emp't & Econ. Dev.*, 747 N.W.2d 367, 371 (Minn. App. 2008).

The police civil-service law does not define "records of efficiency, character, conduct and seniority" or dictate the manner in which a commission considers them. Peterson contends the term "records" plainly refers to written documents and the commission erred by making its promotional decision without reviewing such documents. We disagree. The term "records" has many definitions and encompasses various types of factual or historical accounts, including written documents. *See The American Heritage Dictionary* 1470 (5th ed. 2011) (listing seven definitions, including "account, as of information or facts, set down *especially in* writing as a means of preserving knowledge" and "[t]he known history of performance, activities, or achievement"). But nothing in the broad concept of "records" mandates a writing. Peterson nonetheless equates the term "records" with a "personnel file" or "personnel record," implicitly inviting us to read "written" into the statute. We decline to do so. When the legislature intends to refer to these types of written records maintained by an employer, it does so. *Cf.* Minn. Stat. §§ 13.43, subd. 2 (addressing access to "personnel data" on current and former government employees), 181.960, subd. 4 (defining "personnel record" for purposes of general employment statutes) (2012). Such references are conspicuously absent from the police civil-service law. Under the plainly broad language of the statute, the "records" of an officer's efficiency, character, conduct, and seniority may take the form of written documents, an oral account of this information, or some combination of the two.

The context of the police civil-service law also is consistent with a broad interpretation of the term "records." *In re Robledo*, 611 N.W.2d 67, 69 (Minn. App. 2000) (requiring consideration of statutory context in determining plain meaning). A commission's promotional decisions must "carry out the purposes of [the police civil-service law]." Minn. Stat. § 419.06. The principal purpose of the law is to provide an objective hiring and promotional system "by which [police] positions could be filled, so far as humanly possible, as a result of merit, competency, training and education." *Anderson*, 414 N.W.2d at 393 (citing *State ex rel. Kos v. Adamson*, 226 Minn. 177, 183, 32 N.W.2d 281, 282 (1948)). Nothing in the police civil-service law suggests that a commission can only objectively consider a candidate's records of efficiency, character, conduct, and seniority by examining written documents in a personnel file. We discern no reason why it cannot also do so by means of a thorough oral discussion of those factors with a candidate.

Finally, while the supreme court has never directly addressed the issue presented here, its historical discussion of the requirement that promotional decisions be based on "records" is consistent with a broad interpretation of that term. That historical discussion began in *Kos*, in which the supreme court reversed a promotional decision based on a commission's near complete failure to comply with all aspects of the police civil-service law. 226 Minn. at 186, 32 N.W.2d at 285-86. In addressing the largely undisputed failure to comply with the "records" requirement, the supreme court observed that a civil-service commission must keep "[t]he records in question . . . in the regular course of the administration of civil service" because obtaining or gathering such information "for the

6

occasion" would "open[] the door to personal favoritism and influence, which the law was designed to prevent." *Id.* at 184, 32 N.W.2d at 285. Peterson seeks to elevate this observation to a holding that the commission must consider pre-existing written employment documents. But the supreme court's subsequent cases indicate otherwise.

Consistent with its concern that consideration of contemporaneously prepared records would lead to favoritism and improper influence, the supreme court has applied *Kos* to require demonstrably objective hiring and promotional processes. *E.g.*, *Anderson*, 414 N.W.2d at 393; *Coudron v. Johnson*, 288 N.W.2d 689, 691 (Minn. 1979). But it has not required any particular method of achieving objectivity, such as consideration of written employment records. Indeed, in *Anderson*, the supreme court affirmed a selection process in which the civil-service commission considered "records of efficiency, character, conduct and seniority" by reviewing resumes addressing those traits that the candidates prepared and submitted. 414 N.W.2d at 390, 393. The supreme court further noted that the commission's failure to make an independent written record detailing its consideration of those factors was not fatal because the police civil-service law "requires neither a written record of consideration of all factors listed in Minn. Stat. § 419.06(9) . . . nor written findings, nor have any of our prior cases." *Id.* at 394 n.3.

Based on our careful consideration of the language in Minn. Stat. § 419.06 and the supreme court's historical treatment of that statute, we conclude that a civil-service commission complies with the police civil-service law when it employs a promotional process that provides for objective consideration of a candidate's merit, including factual and historical accounts of the candidate's efficiency, character, conduct, and seniority.

7

The process employed here did just that. The commission approved and implemented a multi-faceted promotional process that included a standardized, thorough oral interview designed to elucidate each candidate's values, strengths, and weaknesses; the extent and nature of his education, training, and experience; and his responsibility, judgment, and ability to both lead others and work cooperatively. It is undisputed that this process was transparent and objective, and Peterson does not point to any evidence of favoritism or arbitrariness.

On this record, we conclude that the promotional process that the commission employed amply satisfies the requirements of Minn. Stat. § 419.06(9). Accordingly, the commission did not err by certifying its police detective promotional eligible register.

**Affirmed.**