**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-0027**
**A14-0123**

Jeff Persigehl and Samone Bodley,
individually and on behalf of the putative classes,
Respondents (A14-0027),
Appellants (A14-0123),

vs.

Ridgebrook Investments Limited Partnership,
Appellant (A14-0027),
Respondent (A14-0123),

MNS Investors, LLP d/b/a
Bar-Ett Investment Company, et al.,
Appellants (A14-0027),
Respondents (A14-0123),

American Utility Management, Inc.,
Appellant (A14-0027),
Respondent (A14-0123).

**Filed February 2, 2015**
**Affirmed; certified question answered in the negative**
**Hudson, Judge**
**Concurring in part, dissenting in part, Peterson, Judge**

Hennepin County District Court
File No. 27-CV-13-13415

E. Michelle Drake, Anna P. Prakash, Joseph Hashmall, Nichols Kaster PLLP, Minneapolis, Minnesota (for Persigehl and Bodley)

Richard T. Ostlund, Brooke D. Anthony, Anthony, Ostlund, Baer & Louwagie P.A., Minneapolis, Minnesota (for Ridgebrook Investment Limited Partnership)

Mark A. Jacobson, Karla M. Vehrs, Lindquist & Vennum LLP, Minneapolis, Minnesota (for MNS Investors LLP, et al.)

Bradley M. Jones, Jeffrey M. Thompson, George H. Norris, Meagher & Geer, P.L.L.P., Minneapolis, Minnesota (for American Utility Management)

Considered and decided by Hudson, Presiding Judge; Peterson, Judge; and Larkin, Judge.

## S Y L L A B U S

Minnesota Statute section 504B.215 (2014) does not prohibit a landlord from billing tenants for fees charged in connection with tenants' utility bills and does not impose a requirement that those fees be equitable in comparison to the costs of the utilities services apportioned among tenants.

## O P I N I O N

**HUDSON**, Judge

In these consolidated appeals involving a certified question, a notice of related appeal (A14-0027), and a separate appeal (A14-0123), we consider whether Minn. Stat. § 504B.215 prohibits a landlord from billing tenants for fees in connection with a tenant's utility bill; whether the statute imposes a requirement that those fees be equitable in comparison to the cost of the utility service itself; and whether the district court erred in dismissing an unjust-enrichment claim against the utility administrator who billed tenants for the fees. We conclude that the certified question is important and doubtful and that the statute does not prohibit landlords from billing tenants for the fees at issue here; answer the certified question in the negative; and affirm the district court's decision to dismiss the unjust-enrichment claim.

**FACTS**

Jeff Persigehl and Samone Bodley (tenants) are the named plaintiffs of a putative class action. At the time the complaint was filed, they resided respectively in two apartment complexes: (1) Minnetonka Terrace, located in St. Louis Park and owned by MNS Investors, LLP; and (2) Ridgebrook Apartments, located in Brooklyn Park and owned by Ridgebrook Investments Limited Partnership. Both apartment complexes are managed by Steven Scott Management, Inc. (SSM). SSM contracts with American Utility Management, Inc. (AUM)[1] to provide utility billing services for both complexes. Because both apartment complexes are served by a single meter, AUM pays the total cost of the utility, apportions the utility costs among the tenants, and then bills each tenant for his or her share of the utility. Included in each tenant's lease is a Water/Sewer Utilities and Trash Addendum in which the tenant agrees to pay AUM the following fees: a new-account activation fee, a monthly administrative fee, a late-payment fee, and a convenience fee if the tenant pays by credit card (add-on fees). The legality of these add-on fees is at the heart of this case.

In July 2013, tenants filed a class-action complaint, asserting two causes of action. In count one, tenants allege alternative claims. First, they assert that Minn. Stat. § 504B.215 prohibits landlords from billing tenants for add-on fees. Second, tenants allege that, if Minn. Stat. § 504B.215 permits landlords to bill tenants for add-on fees, the fees billed by AUM violate Minn. Stat. § 504B.215, subd. 2a, which, tenants allege,

---

[1] Ridgebrook Investments Limited Partnership, MNS Investors, SSM, and AUM are collectively referred to as "landlords." While AUM is not necessarily a landlord, this opinion refers to it as a landlord for ease of reference.

requires that add-on fees be equitable and reasonable compared to the actual cost of the utility service. In count two, tenants assert a claim of unjust enrichment against AUM.

Landlords moved to dismiss the complaint for failure to a state a claim upon which relief can be granted, pursuant to Minn. R. Civ. P. 12.02(e). The district court denied the motion to dismiss count one, concluding that, though Minn. Stat. § 504B.215 does not prohibit landlords from charging add-on fees, the statute requires that those fees be equitable and reasonable in comparison to the cost of the utility itself. The district court granted the motion to dismiss count two, concluding that tenants' unjust-enrichment claim failed because tenants possessed a remedy at law. The district court subsequently issued an order certifying the following question as important and doubtful:

> Minn. Stat. § 504B.215 provides that "[a] landlord of a single-metered residential building who bills for utility charges separate from rent must predetermine and put in writing for all leases an equitable method of apportionment and the frequency of billing by the landlord." Does this provision include a requirement that any fees charged by a landlord in connection with utility billing be equitable or reasonable in comparison to the cost of services rendered or the utility costs paid?

The district court also granted tenants' motion for entry of partial judgment on the unjust-enrichment claim.

Landlords filed a notice of appeal from the order denying the motion to dismiss count one. Tenants filed a notice of related appeal from the same order, challenging the district court's conclusion that Minn. Stat. § 504B.215 does not prohibit landlords from billing tenants for add-on fees. Tenants also filed a separate notice of appeal from the

4

district court's partial judgment dismissing count two of the complaint. This court subsequently consolidated the appeals.

**ISSUES**

I.    Did the district court properly certify the question of whether Minn. Stat. § 504B.215 requires that fees charged by a landlord in connection with utility billing be equitable and reasonable in comparison to the cost of services rendered or utility costs paid?

II.   Does Minn. Stat. § 504B.215 prohibit landlords from billing tenants for add-on fees in connection with a tenant's utility bill?

III.  Given the conclusion that Minn. Stat. § 504B.215 does not prohibit add-on fees, does the statute require that those fees be equitable compared to the actual cost of the utility?

IV.   Did the district court err by dismissing tenants' claim for unjust enrichment?

**ANALYSIS**

A party may take immediate appeal from an order denying a motion to dismiss a complaint for failure to state a claim upon which relief can be granted if "the [district] court certifies that the question presented is important and doubtful." Minn. R. Civ. App. P. 103.03(i). But we must dismiss an appeal involving a certified question if we conclude that the district court erroneously certified the question as important and doubtful. *See Proprietors Ins. Co. v. Cohen*, 451 N.W.2d 904, 906 (Minn. App. 1990) (dismissing appeal because it was concluded that the district court erroneously certified question as important and doubtful). We also must dismiss a related appeal from an order involving a certified question if the underlying appeal is dismissed. *Doe ex rel. Doe v. Columbia Heights Sch. Dist.*, 842 N.W.2d 38, 48–49 (Minn. App. 2014). Here, landlords have filed a notice of appeal from the district court's order denying their motion to dismiss count

5

one, and tenants have filed a notice of related appeal from the same order. Because we cannot reach the merits of either appeal unless we conclude that the certified question is important and doubtful, we address this issue first.

**I**

We independently determine whether a certified question is important and doubtful. *In re Welfare of Child of L.M.L.*, 730 N.W.2d 316, 319 (Minn. App. 2007). It is the "exceptional case" that meets the criteria for certification. *Jacka v. Coca–Cola Bottling Co.*, 580 N.W.2d 27, 30 (Minn. 1998). "The certification process is not a substitute for the normal appellate process nor a method for securing advisory opinions." *Id.*

The importance of a question depends on whether the question (1) has statewide impact, (2) is likely to be reversed, (3) is dispositive of potentially lengthy proceedings, and (4) will impose substantial harm on the parties if it is wrongly decided. *Siewert v. N. States Power Co.*, 757 N.W.2d 909, 914 (Minn. App. 2008), *aff'd by* 793 N.W.2d 272 (Minn. 2011). We give special consideration to "whether reversal would terminate potentially lengthy proceedings." *Id.* at 914–15. "A question is doubtful only if there is no controlling precedent." *L.M.L.*, 730 N.W.2d at 319 (quotation omitted). But the fact that the question is one of first impression is insufficient by itself to justify certification. *Id.* To merit certification, the question must "be one on which there is substantial ground for a difference of opinion." *Id.* (quoting *Emme v. C.O.M.B., Inc.*, 418 N.W.2d 176, 179–80 (Minn. 1988)).

The certified question asks us to consider whether Minn. Stat. § 504B.215 imposes a requirement that the fees charged in connection with a tenant's utility bill must be equitable in comparison to the cost of the utility service itself. We conclude that this question is important. Resolution may impact landlord-tenant relationships statewide. Landlords indicate that AUM and similar companies provide these or similar services to landlords throughout the state, and it is possible that similarly-situated tenants will file suit. Moreover, if we reverse the district court's decision regarding the merits of the certified question, our conclusion would be dispositive of this litigation and result in the termination of potentially lengthy litigation.

We also conclude that the certified question is doubtful. No controlling precedent interprets the provisions of Minn. Stat. § 504B.215 relevant to this action. And there is a substantial basis for a difference of opinion regarding resolution of this question, based upon the parties' reasonable, but conflicting, interpretations of the statutory requirement that landlords predetermine an "equitable method of apportionment" to divide utility costs among tenants. Minn. Stat. § 504B.215, subd. 2a(a)(2). Because we conclude that the certified question is important and doubtful, we address the merits of the issues presented by landlords' notice of appeal and tenants' notice of related appeal.

**II**

We address first the issue presented by tenants' notice of related appeal because it is possible that resolution of this issue would render it unnecessary to address the merits of the certified question. Tenants argue that the district court erroneously construed Minn. Stat. § 504B.215 to permit landlords to charge add-on fees in connection with a

7

tenant's utility bill. Tenants argue that the plain language of the statute prohibits the fees charged by AUM and, in the alternative, assert that legislative history demonstrates that the statute was not intended to authorize such fees.

Tenants' argument raises a question of statutory interpretation, which this court reviews de novo. *Schwanke v. Minn. Dep't of Admin.*, 851 N.W.2d 591, 594 n.1 (Minn. 2014). "The goal of all statutory interpretation is to 'ascertain and effectuate the intention of the legislature.'" *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 836 (Minn. 2012) (quoting Minn. Stat. § 645.16 (2010)). "The first step in statutory interpretation is to determine whether the statute's language, on its face, is ambiguous." *Larson v. State*, 790 N.W.2d 700, 703 (Minn. 2010) (quotation omitted). In determining whether a statute is ambiguous, we "construe the statute's words and phrases according to their plain and ordinary meaning." *In re Fin. Responsibility for Out-of-Home Placement Costs for S.M.*, 812 N.W.2d 826, 829 (Minn. 2012). Plain meaning "presupposes the ordinary usage of words that are not technically used or statutorily defined, relies on accepted punctuation and syntax, and draws from the full-act context of the statutory provision." *Occhino v. Grover*, 640 N.W.2d 357, 359 (Minn. App. 2002) (citations omitted), *review denied* (Minn. May 28, 2002).

A statute is ambiguous only if its plain language is subject to more than one reasonable interpretation. *Tuma v. Comm'r of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn. 1986). If a statute is unambiguous, this court's role "is to enforce the language of the statute and not explore the spirit or purpose of the law." *Caldas*, 820 N.W.2d at 836. But if the statute is ambiguous, we consider "the factors set forth by the Legislature for

interpreting a statute." *Christianson v. Henke*, 831 N.W.2d 532, 537 (Minn. 2013) (quotation omitted). We may also consider "substantive-policy canons," which include "statutory-based canons that include restrictions on the interpretation of statutory exemptions and restrictions on the effects of repeal." *Occhino*, 640 N.W.2d at 360 (citations omitted). When construing a statute, we make every effort to give effect to all provisions of the statute. Minn. Stat. § 645.16 (2014).

Minnesota Statute section 504B.215, subdivision 2, requires that "the landlord of a single-metered residential building . . . be the bill payer responsible, and . . . the customer of record contracting with the utility for utility services." But this "subdivision does not prohibit a landlord from apportioning utility service payments among residential units and either including utility costs in a unit's rent or billing for utility charges separate from rent." *Id*. If, as here, the landlord chooses to bill for utility charges separately from rent, the landlord must "predetermine and put in writing for all leases an equitable method of apportionment and the frequency of billing." *Id*., subd. 2a(a)(2).

We begin by observing that the add-on fees charged here are a term of tenants' lease, and that a lease is a form of contract. *Metro. Airports Comm'n v. Noble,* 763 N.W.2d 639, 645 (Minn. 2009). We also note that parties are free to contract to whatever terms they agree, provided that those terms are not prohibited by law. *Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). And here, the statute contains no language that expressly prohibits or otherwise references a landlord's authority to charge add-on fees. Minn. Stat. § 504B.215. We generally do not "read into the statute a requirement

9

that the Legislature has omitted." *Karl v. Uptown Drink, LLC*, 835 N.W.2d 14, 19 (Minn. 2013).

But we have recognized, in certain instances, that the complete silence of a statute on a particular topic renders the statute ambiguous. *See Rohmiller v. Hart*, 811 N.W.2d 585, 590 (Minn. 2012) (listing examples where a statute's silence rendered the statute ambiguous). When determining whether a statute is ambiguous because of legislative silence, we consider "whether the statutory construction issue . . . involves a failure of expression or an ambiguity of expression." *Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 760 (Minn. 2010). If we conclude that the statutory construction involves an ambiguity of expression, we may look beyond the language of the statute to determine legislative intent. *Id.*

Here, we cannot conclude that the legislative silence involves an ambiguity of expression. The plain language of the statute does not prohibit landlords and tenants from including in a lease a provision regarding add-on fees. Instead, the legislature has chosen, via subdivision 2, to determine which party is responsible for making utility payments to the utility provider in a single-meter building and to specify the methods by which landlords may apportion utility service payments among tenants. Minn. Stat. § 504B.215, subd. 2. When a statute "is clearly limited to specifically enumerated subjects, we do not extend its application to other subjects by process of construction." *In re Welfare of R.S.*, 805 N.W.2d 44, 51 (Minn. 2011). We are not insensitive to tenants' claim that, in some instances, the add-on fees exceed the actual utility costs. Nevertheless, nothing in the plain language of the statute prohibits a landlord from

10

charging additional fees. To conclude otherwise would require us to add language to the statute imposing a prohibition consistent with tenants' interpretation, and we do not supply the omissions of the legislature through judicial construction. *Genin v. 1996 Mercury Marquis*, 622 N.W.2d 114, 117 (Minn. 2001). We therefore conclude that Minn. Stat. § 504B.215 does not prohibit a landlord for a single-meter residential building from billing tenants for fees in connection with the tenants' utility bills.

Tenants argue that, under the doctrine of *expressio unius est exclusio alterius*, because the legislature permitted landlords to apportion utility service payments among tenants, the legislature prohibited landlords from billing tenants for add-on fees. *See* Minn. Stat. § 645.19 (2014) (codifying that doctrine). The doctrine of *expressio unius est exclusio alterius* means that the expression of one thing is the exclusion of another. *In re Welfare of J.B.*, 782 N.W.2d 535, 543 (Minn. 2010). Because this doctrine "generally reflects an inference that any omissions in a statute are intentional," it is applied only when "the language of the statute supports such an inference." *State v. Caldwell*, 803 N.W.2d 373, 383 (Minn. 2011). We cannot "read the enumeration of one case to exclude another unless it is fair to suppose that [the legislature] considered the unnamed possibility and meant to say no to it." *Id.* (quoting *Barnhart v. Peabody Coal Co.,* 537 U.S. 149, 168, 123 S. Ct. 748, 760 (2003)). The exclusion of a term is inferred only when a term is omitted from a list of "other enumerated terms." *Id.*

We decline to infer from subdivision 2 that the legislature intended to prohibit a landlord from adding fees to the cost of the utility apportioned to a tenant. This subdivision does not contain a list of fees that landlords may charge. Rather, as set out

11

above, it governs a variety of issues regarding the process in which tenants are assessed and pay for utility services in single-meter residential buildings. Minn. Stat. § 504B.215, subd. 2. None of these issues addresses a landlord's authority to bill a tenant for fees in addition to the cost of the utility apportioned to the tenant. The more appropriate inference to draw is that the legislature did not address the issue of add-on fees when it enacted this section and did not intend for this section to govern a landlord's authority to charge those fees. We therefore conclude that the doctrine of *expressio unius est exclusio alterius* is inapplicable.

Tenants also maintain that, if landlords are permitted to bill tenants for add-on fees, the provision of the statute that allows tenants to review their utility bill is rendered meaningless because the amount that the tenant pays differs from the cost of the utility that the landlord pays. *See* Minn. Stat. § 504B.215, subd. 2a(a)(3). We disagree. We generally construe all laws, if possible, to give effect to all of their provisions. Minn. Stat. § 645.16. Here, the purpose of tenant review is to ensure that landlords apportion utility charges equitably among tenants. To accomplish this, landlords are required to provide the requesting tenant the "actual utility bill," "each apportioned utility bill," "past copies of actual utility bills for any period of the tenancy for which the tenant received an apportioned utility bill," and the method selected by the landlord to apportion utility costs. Minn. Stat. § 504B.215, subd. 2a(a)(2)–(3).[2] A tenant who reviews the apportioned utility bills in conjunction with the actual and previous utility bills is

---

[2] Landlords must also provide prospective tenants "notice of the total utility cost for the building for each month of the most recent calendar year." Minn. Stat. § 504B.215, subd. 2a(a)(1).

therefore able to separate the utility costs from the add-on fees and determine whether the landlord apportioned utility costs equitably. Thus, the plain language of the statute comports with all other portions of the statutory scheme.

Finally, tenants assert that the legislature did not intend to permit landlords to "overwhelm" a tenant's utility bill with add-on fees, leading to an absurd result. *See* Minn. Stat. § 645.17(1) (2014) (stating presumption that legislature did not intend absurd result). But we may not look past the plain language of an unambiguous statute absent the "rare case" when the plain language "utterly confounds a clear legislative purpose." *Weston v. McWilliams & Assocs. Inc.*, 716 N.W.2d 634, 639 (Minn. 2006) (quotation omitted). This is not such a case. Because we conclude that Minn. Stat. § 504B.215 does not prohibit a landlord from billing tenants for fees in addition to the cost of the utility apportioned to a tenant, we affirm the district court's conclusion that these fees are permitted.

## III

Because we conclude that add-on fees are not prohibited, we next address the merits of the certified question, specifically, whether the statute imposes a requirement that those fees be equitable in comparison to the cost of the utilities services apportioned among tenants. We review de novo questions that the district court has certified as doubtful and important. *B.M.B. v. State Farm Fire & Cas. Co.*, 664 N.W.2d 817, 821 (Minn. 2003). Resolution of this certified question raises an issue of statutory interpretation regarding subdivision 2a of section 504B.215. This subdivision requires that landlords who bill for utility charges separately from rent "must predetermine and

13

put in writing for all leases an equitable method of apportionment." Minn. Stat. § 504B.215, subd. 2a(a)(2). Tenants argue that the phrase "equitable method of apportionment" requires any add-on fees charged by a landlord to be fair and reasonable when compared to the actual cost of the utility service apportioned among tenants.

The statute does not define the phrase "equitable method of apportionment"; thus, we assume that these terms are used according to their plain and ordinary meaning. *Occhino*, 640 N.W.2d at 359. Because the term "equitable" modifies the phrase "method of apportionment," the equitable limitation applies to add-on fees only if the phrase "method of apportionment" encompasses a landlord's decision to bill tenants for add-on fees.

For several reasons, we conclude that the phrase "method of apportionment" does not relate to a landlord's authority to bill tenants for add-on fees. First, subdivision 2 of the statute requires landlords to select one of two processes to accomplish the apportionment of utility service payments among tenants: (1) including the utility cost in the tenant's rent; or (2) billing the tenant separately for the utility charge. Minn. Stat. § 504B.215, subd. 2. Subdivision 2a imposes additional requirements on a landlord who chooses to bill tenants separately for utility charges. Like subdivision 2, subdivision 2a governs a landlord's authority to apportion utility service payments among tenants, but it is silent regarding a landlord's authority to bill tenants for add-on fees. We are required to interpret various provisions of the same statute in light of each other. *Baker v. Ploetz*, 616 N.W.2d 263, 269 (Minn. 2000). Consistent with our interpretation of subdivision 2,

14

as discussed above, we therefore conclude that the legislature did not intend for subdivision 2a to govern the issue of add-on fees.

Second, our interpretation of subdivision 2a is informed by the legislature's decision to expressly limit or restrict the types of fees that landlords may charge in other sections of chapter 504B. For example, the legislature has limited the late fees that a landlord may charge to eight percent of the rent payment. Minn. Stat. § 504B.177(a) (2014). The legislature has also regulated the use of applicant-screening fees. Minn. Stat. § 504B.173 (2014). Had the legislature intended to regulate fees associated with the apportionment of utility charges separately from rent, it easily could have added to subdivision 2a similar restrictions governing the use of such fees. The legislature's failure to do so demonstrates that it did not intend for this subdivision to regulate a landlord's authority to charge add-on fees.

Finally, while not dispositive of our analysis, we are concerned that tenants' proposed interpretation of the subdivision would require courts to act as policymakers. The determination of the appropriate level of add-on fees that a landlord may charge likely involves consideration of several factors, such as the respective needs of the tenant and landlord, the services provided by the entity charging those fees, the fairness of the fees, and the reasonableness of the landlord's costs and profit margins. Consideration of these factors and the competing interests of landlords and tenants requires assessment of public-policy alternatives, a deliberation best left for the legislature's attention. *See generally* Minn. Stat. §§ 504B.001 to .471 (2014) (extensively regulating landlord-tenant relationships); *cf. In re Request of Interstate Power Co.*, 574 N.W.2d 408, 412–13 (Minn.

1998) (stating that utility-rate making is a legislative act because it requires consideration of "both cost and noncost factors and making choices among public policy alternatives" (quotation omitted)).  For these reasons, we conclude that add-on fees are not subject to the equitable limitations that govern a landlord's ability to bill for utility charges separately from rent, and we answer the certified question in the negative.

### IV

Finally, tenants assert that the district court erred in dismissing their unjust-enrichment claim against AUM.  We "review de novo the district court's grant of a motion to dismiss under Minn. R. Civ. P. 12.02(e)." *Sipe v. STS Mfg., Inc.*, 834 N.W.2d 683, 686 (Minn. 2013).  A pleading should be dismissed "only if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded." *Bahr v. Capella Univ.*, 788 N.W.2d 76, 80 (Minn. 2010) (quotation omitted).  "The reviewing court must consider only the facts alleged in the complaint, accepting those facts as true and must construe all reasonable inferences in favor of the nonmoving party." *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn. 2003).

A plaintiff may recover under a theory of unjust enrichment only when the plaintiff establishes that the defendant retained a benefit that was "not legally justifiable." *Caldas*, 820 N.W.2d at 838.  Because we have concluded that the benefit that AUM received was not prohibited or limited by law, we also conclude that tenants are unable to demonstrate that AUM's retention of the add-fees was not legally justified.  We therefore affirm the district court's decision to dismiss tenants' unjust-enrichment claim.

16

## DECISION

Because Minn. Stat. § 504B.215 does not prohibit a landlord from charging a tenant fees in addition to the cost of the utility apportioned to the tenant, and because the statute does not require that those fees be reasonable and equitable compared to the cost of the utility apportioned to the tenant, we affirm the district court's conclusion that those fees are permitted, answer the certified question in the negative, and affirm the district court's decision to dismiss tenants' unjust-enrichment claim.

**Affirmed; certified question answered in the negative.**

**PETERSON**, Judge (dissenting in part)

I respectfully dissent from the majority's decision in section III of its opinion answering the certified question in the negative.

Minn. Stat. § 504B.215, subd. 2 (2014) states that the landlord of a single-metered residential building is not prohibited "from apportioning utility service payments among residential units and either including utility costs in a unit's rent or billing for utility charges separate from rent." But, under Minn. Stat. § 504B.215, subd. 2a(a)(2) (2014), a landlord who bills for utility charges separately from the rent "must predetermine and put in writing for all leases an equitable method of apportionment and the frequency of billing by the landlord." When a tenant is billed a fee solely because a landlord chose to apportion utility service payments among residential units and bill for utility charges separately from the rent, that fee is part of the method of apportionment chosen by the landlord; the apportionment is not accomplished without the fee. And if a fee billed as part of the method of apportionment is not equitable, the method of apportionment is not equitable. Therefore, I would answer the certified question in the affirmative and remand to allow the district court to decide whether the methods of apportionment predetermined by the appellant landlords are equitable.