# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A16-0874

Timothy Hall, Jr., et al.,
Respondents,

vs.

State of Minnesota, et al.,
Appellants

**Filed January 23, 2017**
**Reversed and remanded**
**Worke, Judge**

Ramsey County District Court
File No. 62-CV-15-2112

Daniel C. Hedlund, Daniel E. Gustafson, Joseph C. Bourne, Gustafson Gluek PLLC, Minneapolis, Minnesota; and

Vildan A. Teske, Phillip M. Kitzer, Brian T. Rochel, Teske, Micko, Katz, Kitzer & Rochel, PLLP, Minneapolis, Minnesota; and

J. Gordon Rudd, Jr., David Cialkowski, Zimmerman Reed, PLLP, Minneapolis, Minnesota; and

Patrick Michenfelder, Throndset Michenfelder, LLC, St. Michael, Minnesota; and

Garrett D. Blanchfield, Brant D. Penney, Reinhardt, Wendorf & Blanchfield, St. Paul, Minnesota (attorneys for respondents)

Lori Swanson, Attorney General, Sarah L. Krans, Assistant Attorney General, St. Paul, Minnesota (for appellants)

Considered and decided by Worke, Presiding Judge; Stauber, Judge; and Bratvold, Judge.

The Minnesota Uniform Disposition of Unclaimed Property Act (MUPA), Minn. Stat. §§ 345.31-.60 (2016), does not create an unconstitutional taking and satisfies procedural due-process requirements.

## OPINION

**WORKE**, Judge

This certified-question appeal under Minn. R. Civ. App. P. 103.03(i) arises from a constitutional challenge to MUPA. Appellants, the State of Minnesota and its commissioner of commerce, urge us to answer the district court's certified question as to whether MUPA creates an unconstitutional taking in the negative, and answer the district court's certified question as to whether MUPA meets procedural due-process requirements in the affirmative. We agree with appellants and reverse and remand.

## FACTS

In 2011, respondent Timothy Hall Jr. did not receive his final paycheck from his employer. In 2015, Hall learned from his father that his paycheck had been remitted to appellant Michael Rothman, Commissioner of the Minnesota Department of Commerce (commissioner), and was being held by appellant State of Minnesota (state).

In June 2015, respondent Michael Undlin learned from his attorneys that the state was holding two pieces of his property remitted by an insurance company. Undlin began the process of reclaiming his property.

In 2011, respondent Mary Wingfield opened an interest-bearing savings account. In 2014, Wingfield received a letter from the bank asking her to contact the bank regarding

2

the account. Wingfield ignored the bank's request. Wingfield's property was remitted to the commissioner and held by the state.

Respondent Beverly Herron learned from her daughter that the state was holding her property. Herron's daughter made the discovery after searching for Herron's name on [www.missingmoney.com](http://www.missingmoney.com). Wingfield and Herron submitted claims for the return of their property, and each received a check for the amount of the property that did not include interest accrued during the time the state held the property.

All respondents claimed that they did not receive notice from the original holder of the property or from the state that their property had been remitted by the property holder to the state.

On April 8, 2015, respondents filed a proposed class-action complaint against appellants, claiming that MUPA, with its intended purpose of protecting consumers by placing unclaimed property in the state's custody pending return to the rightful owners, was being used by the state to seize private property and use it for the state's benefit without any meaningful effort to locate the rightful owners. Respondents claimed that the state failed to provide adequate notice of its takings, which violated the Due Process Clauses of the United States and Minnesota Constitutions, and that the state's refusal to return interest that accrued on the property while in the state's custody violated the Takings Clauses of the United States and Minnesota Constitutions.

Appellants moved to dismiss pursuant to Minn. R. Civ. P. 12.02 (a), (e), for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted. The matter came before the district court on August 12, 2015.

On December 10, 2015, the district court denied the motion to dismiss with respect to the above-referenced claims. The district court determined that respondents sufficiently alleged a due-process claim, because they alleged that notice is not reasonably certain to inform those affected. The district court determined that respondents also sufficiently alleged a takings claim because appellants took respondents' property and put it in a fund for public use, for which respondents are entitled to just compensation. Appellants petitioned this court for discretionary review. We denied the petition.

On January 14, 2016, appellants moved the district court for an order certifying three questions as important and doubtful for appellate review pursuant to Minn. R. Civ. App. P. 103.03(i). The first questioned whether MUPA created "an unconstitutional taking by not entitling owners to interest on abandoned property after it is delivered to the [c]ommissioner." The second asked whether delivery of property to the commissioner under MUPA violated owners' procedural due-process rights. Finally, the state questioned whether it was a proper party to the action.

The district court granted appellants' request to certify the first two questions. The district court asks us to answer the following certified questions:

> 1. When presumptively abandoned property has been delivered to the Minnesota Commissioner of Commerce pursuant to the Minnesota Uniform Disposition of Unclaimed Property Act . . . and thereafter placed into the general fund for use by the State, has the State effected an unconstitutional taking by failing to compensate owners for the loss of use of that property, including the ability to earn interest on the seized property?
>
> 2. Under the Minnesota Uniform Disposition of Unclaimed Property Act, is lack of pre-seizure notice (other

4

than the statute itself) and the Commissioner's post-seizure method of providing notice to the owners of presumptively abandoned property (i.e., use of the website missingmoney.com and sporadic public events), sufficient to satisfy owners' procedural due process rights?

## ISSUES

I.     Are the certified questions important and doubtful?

II.    Does MUPA create an unconstitutional taking?

III.   Should the district court's certified question regarding due process be rephrased?

IV.   Does MUPA satisfy procedural due-process requirements?

## ANALYSIS

A party may appeal an order denying a motion to dismiss a complaint for failure to state a claim upon which relief can be granted if "the [district] court certifies that the question presented is important and doubtful." Minn. R. Civ. App. P. 103.03(i). An appellate court reviews de novo the denial of a motion to dismiss for failure to state a claim. *Hauschildt v. Beckingham*, 686 N.W.2d 829, 836 (Minn. 2004). Certified questions present issues of law that an appellate court reviews de novo. *Fedziuk v. Comm'r of Pub. Safety*, 696 N.W.2d 340, 344 (Minn. 2005).

### *Are the certified questions important and doubtful?*

This court makes an independent determination of whether the questions certified are important and doubtful. *Nat'l City Bank of Minneapolis v. Lundgren*, 435 N.W.2d 588, 590 (Minn. App. 1989), *review denied* (Minn. Mar. 29, 1989). We may decline to reach the merits if we conclude that the questions are not important and doubtful. *Proprietors Ins. Co. v. Cohen*, 451 N.W.2d 904, 906 (Minn. App. 1990).

5

A question is important if it "(1) has statewide impact, (2) is likely to be reversed, (3) is dispositive of potentially lengthy proceedings, and (4) will impose substantial harm on the parties if it is wrongly decided." *Persigehl v. Ridgebrook Invs. Ltd. P'ship*, 858 N.W.2d 824, 830 (Minn. App. 2015). Courts "give special consideration to whether reversal would terminate potentially lengthy proceedings." *Id.* (quotation omitted).

"A question is doubtful only if there is no controlling precedent." *In re Welfare of Child of L.M.L.*, 730 N.W.2d 316, 319 (Minn. App. 2007) (quotation omitted). But the fact that the question is one of first impression itself is insufficient to justify certification. *Id.* The question must "be one on which there is substantial ground for a difference of opinion." *Id.* (quotation omitted).

The district court's certified questions are important and doubtful. The questions will have a statewide impact. A decision may impact every citizen of this state who has property held by a financial or other institution that has been overlooked or forgotten and could potentially be remitted to the commissioner or has already been remitted to the commissioner. Respondents alleged in the complaint that the state holds approximately $606,000,000 in abandoned property that could be affected by a decision and that the proposed class would "likely include at least tens of thousands of members." Additionally, with a class this numerous, the proceedings will be lengthy. Finally, there is no precedent in Minnesota; these are constitutional questions of first impression, and the parties cite several cases from other jurisdictions that appear to have divergent opinions. Because the questions presented are important and doubtful constitutional questions of statewide impact, they are appropriately before this court.

*MUPA*

MUPA covers certain property, including, but not limited to:

> (a) unclaimed worker's compensation; (b) deposits or payments for repair or purchase of goods or services; (c) credit checks or memos, or customer overpayments; (d) unidentified remittances, unrefunded overcharges; (e) unpaid claims, unpaid accounts payable or unpaid commissions; (f) unpaid mineral proceeds, royalties or vendor checks; and (g) credit balances, accounts receivable and miscellaneous outstanding checks.

Minn. Stat. § 345.39, subd. 1. If this property has been held in the ordinary course of business and remained unclaimed by the owner for more than three years it is "presumed abandoned." *Id.* Any wages owing in the ordinary course of the business that an owner fails to claim for more than one year are "presumed abandoned." *Id.*, subd. 3.

Every holder of property that is presumed abandoned must submit an annual report to the commissioner, including the owner's name and last known address. Minn. Stat. § 345.41(a), (b). Before reporting to the commissioner, the property holder is required to provide notice to the owner advising the owner that the holder is in possession of the property and the necessary steps to prevent abandonment. *Id.*(e). The holder is required to provide this notice when it has the owner's address, the owner's claim is not barred by the statute of limitations, and the property's value is $100 or more. *Id.* Within the next calendar year after the year the abandoned property is remitted to the commissioner, the commissioner must provide notice "in the manner and frequency the commissioner determines to be most effective and efficient in communicating to the persons appearing to be owners of this property." Minn. Stat. § 345.42, subd. 1.

7

The commissioner and state assume custody and safekeeping of the remitted abandoned property. Minn. Stat. § 345.44. All property received is deposited in the state's general fund. Minn. Stat. § 345.48, subd. 1. The commissioner maintains a record available for public inspection of each owner's name and last known address. *Id.*

An owner may make a claim to the abandoned property at any time. Minn. Stat. § 345.49, subd. 1. The commissioner can either pay the claim or hold a hearing on the claim. Minn. Stat. § 345.50. "When property is paid or delivered to the commissioner . . . the owner is not entitled to receive income or other increments accruing thereafter." Minn. Stat. § 345.45.

Respondents alleged that appellants seized their property from the holders of the property, held their property in the general fund, used their property for public use, and failed to give them sufficient notice that the state was using their property. Respondents alleged that MUPA constitutes an unconstitutional taking and that its notice requirements are insufficient and violate their procedural due-process rights.

***Taking***

Certified question:

> When presumptively abandoned property has been delivered to the [commissioner] pursuant to [MUPA] and thereafter placed into the general fund for use by the State, has the State effected an unconstitutional taking by failing to compensate owners for the loss of use of that property, including the ability to earn interest on the seized property?

The Minnesota Constitution provides that "[p]rivate property shall not be taken . . . for public use without just compensation." Minn. Const. art. I, § 13. Whether

8

governmental action constitutes a taking is a question of law that an appellate court reviews de novo. *Wensmann Realty, Inc. v. City of Eagan*, 734 N.W.2d 623, 631 (Minn. 2007).

Appellants argue that the takings claim fails because of United States Supreme Court precedent. In *Texaco, Inc. v. Short*, the Supreme Court examined an Indiana statute regarding the automatic lapse of a mineral interest unused for twenty years, which reverts to the surface owner of the property. 454 U.S. 516, 518, 102 S. Ct. 781, 786 (1982). The statute provided that the unused interest was "extinguished." *Id.* The statute did not require any specific notice to be given prior to the lapse of the interest. *Id.* at 520, 102 S. Ct. at 787. In addressing the claim that the act was a taking of private property without just compensation, the Supreme Court stated that "private property may be deemed to be abandoned and to lapse upon failure of its owner to take reasonable actions imposed by law, [and] this Court has never required the State to compensate the owner for the consequences of his own neglect." *Id.* at 530, 102 S. Ct. at 792.

Respondents claim that appellants' "heavy reliance on *Texaco* . . . is gravely misplaced" because in that case, the Court approved Indiana's "use-it-or-lose-it mineral rights statute[], which [is] nothing like unclaimed property laws, intended to protect true owners and preserve their property rights." But the Oklahoma Supreme Court relied on *Texaco* in considering the constitutionality of its Uniform Unclaimed Property Act (UUPA). *Dani v. Miller*, 374 P.3d 779 (Okla. 2016), *cert. denied*, 2016 WL 5632195 (U.S. Nov. 14, 2016).

As analyzed in *Dani*, UUPA is similar to MUPA in that the property is presumed abandoned after a period of time in the absence of any action by or contact with the owner.

9

*Id.* at 786-87. UUPA requires the holders of abandoned property to file a report with the state treasurer and remit the property to the treasurer. *Id.* at 787. The state then assumes custody of the property and deposits it in the unclaimed property fund. *Id.* The owners of unclaimed property argued that UUPA effectuated a taking of private property without just compensation. *Id.* at 793. The court in *Dani* stated that "the Supreme Court of the United States conclusively rejected the notion that legal termination of ownership rights in abandoned property constitutes a taking entitled to just compensation." *Id.*

The court recognized that UUPA was different than the statute in *Texaco* because, unlike the Indiana statute, UUPA does not extinguish the rights of the owners of abandoned property. *Id.* at 794. But the court further stated: "Here, as in *Texaco* . . . the intake and custody of abandoned property is attributable to the inattention or abandonment of the owners. The rationale of *Texaco* . . . is thus applicable. No taking occurs." *Id.*

*Texaco* and *Dani* are applicable here. Respondents argue, however, that the touchstone of the takings claim is the governmental use of the property for the benefit of the public, rather than its possession. Respondents concede: "If the [s]tate truly acted solely as custodian of the funds, salting the property away in a vault until returned, the obligation to pay just compensation may not arise." Respondents allege that because the state uses the property, the owners essentially become lenders and the state a borrower and as such the owners are entitled to the equitable interest the state did not have to pay to borrow from another source. But the interest that they claim they are now due for "lending" their property to the state was not raised in the complaint. The complaint alleged that the state's failure to return earnings or constructive interest that accrued on the property while

10

in the state's custody constituted a taking.[1]  Under MUPA, when property is delivered to the commissioner, the "owner is not entitled to receive income or other increments accruing thereafter."  Minn. Stat. § 345.45.

Based on United States Supreme Court precedent, MUPA does not result in an unconstitutional taking.  We answer the first certified question in the negative.

### Due process

Certified question:

> Under [MUPA] is lack of pre-seizure notice (other than the statute itself) and the [c]ommissioner's post-seizure method of providing notice to the owners of presumptively abandoned property (i.e., use of the website missingmoney.com and sporadic public events), sufficient to satisfy owners' procedural due process rights?

#### Rephrasing certified question

Appellants first argue that this certified question should be rephrased.  An appellate court "has the authority to clarify the question certified." *State v. Larivee*, 656 N.W.2d 226,

---

[1] Respondents, citing *Cerajeski v. Zoeller*, 735 F.3d 577 (7th Cir. 2013), claim that "the Seventh Circuit recently held that failing to pay interest on unclaimed property constitutes a taking that requires just compensation."  *Cerajeski* involved an interest-bearing account. 735 F.3d at 579.  The court stated that the owner was owed the principal and interest because "if you own a deposit account that pays interest, you own the interest, whether or not state law calls interest property." *Id.* at 580.  Here, we have only one respondent with an interest-bearing account. This was a proposed class-action lawsuit; thus, we consider only respondents' common claims.  *See* Minn. R. Civ. P. 23.01(b), (c) (stating that members of a class may sue as representative parties only if there are questions of law or fact common to the class, and the claims and defenses of the representative parties are typical of the claims or defenses of the class); *Lewy 1990 Trust ex rel. Lewy v. Investment Advisors, Inc.*, 650 N.W.2d 445, 453 (Minn. App. 2002) (stating that class certification requires claims arising from the same event or based on the same legal theory), *review denied* (Minn. Nov. 19, 2002).

228 (Minn. 2003). "The certification should be carefully and precisely framed so as to present distinctly and clearly the question of law involved." *State v. Knoch*, 781 N.W.2d 170, 175 (Minn. App. 2010) (quotation omitted), *review denied* (Minn. June 29, 2010).

We are persuaded by appellants' request. First, MUPA does not use the word "seizure." Thus, because the question should be precisely framed, it should closely match the language in the law involved. Also, under MUPA, a holder of certain property is required to give certain owners notice prior to delivery of the property to the commissioner. Minn. Stat. § 345.41(e). Finally, the commissioner is required to provide notice after the property is in the state's custody "in the manner and frequency the commissioner determines to be most effective and efficient in communicating to the persons appearing to be owners of this property." Minn. Stat. § 345.42, subd. 1. The certified question states that the commissioner uses only the website and sporadic public events to provide notice. The commissioner also, at least, maintains a record of owners of abandoned property for public inspection during business hours. *See* Minn. Stat. § 345.48, subd. 1.

Respondents suggest that rephrasing is improper because it misleadingly implies that they are challenging only the text of MUPA when they are also challenging the commissioner's actual inadequate attempts to provide notice. But, although respondents claim that the commissioner's actual attempts to provide notice are inadequate, each respondent received notice that the state held their property.

For due process to be satisfied, there must be "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr.*

12

*Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950). Hall was informed by his father that his name and address were on the state list of individuals whose property it was holding. Undlin learned from his attorneys that his name and address were on the state's list. Wingfield received a letter from her bank, but ignored it. Herron's daughter discovered Herron's name on [www.missingmoney.com](www.missingmoney.com). *Mullane* does not require actual notice of a proceeding or action, but rather notice "reasonably calculated" to inform parties of their opportunity to be heard. Notice was reasonably calculated here to inform the parties. Therefore, the commissioner's actual efforts were not inadequate.

Appellants suggest that the certified question should be phrased: "Is the notice and process provided under [MUPA] sufficient to satisfy owners' procedural due process rights?" We agree and conduct the following analysis for an answer.

### Due-process challenge

This court conducts a "two-step analysis to determine whether the government has violated an individual's procedural due-process rights." *Sawh v. City of Lino Lakes*, 823 N.W.2d 627, 632 (Minn. 2012). First, this court "must identify whether the government has deprived the individual of a protected life, liberty, or property interest." *Id.* If the government's action has not deprived the individual of such an interest, no process is due. *Id.* If the government's action has deprived the individual of a protected interest, then this court must determine whether the procedures used by the government were constitutionally sufficient. *Id.* "The procedures afforded by the government must provide an individual with notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (quotation omitted).

13

Appellants argue that MUPA does not deprive owners of a protected property interest because it merely results in the substitution of the commissioner as the holder of the property. Appellants cite *Anderson Nat'l Bank v. Luckett*, in which Kentucky law required every bank to turn over to the state deposits that remained inactive and unclaimed for specified periods. 321 U.S. 233, 236, 64 S. Ct. 599, 601 (1944). The United States Supreme Court had to determine whether Kentucky's statute afforded due process of law, even though the depositors may not receive personal notice of the pending transfer. *Id.* The Supreme Court concluded that "prior to a judicial decree of actual abandonment, the depositors will not be deprived of their property by the surrender of their bank accounts to the state." *Id.* at 241, 64 S. Ct. at 604. Because the statute merely compelled the "summary substitution of the state for the bank," it deprived the depositors of "none of their rights as creditors, preserving their right to demand from the state payment of the deposits and their right to resort to the courts if payment is refused." *Id.* at 241-42, 64 S. Ct. at 604.

Based on *Anderson*, respondents fail to show that the government's action deprived them of a protected property interest because they remained the owners of the presumptively abandoned property; the property was just transferred from one holder to another (the state).

But even if respondents were deprived of a protected property interest, MUPA provides adequate notice. The Supreme Court in *Texaco* concluded that Indiana's mineral interests act, which extinguished an unused interest, did not violate procedural due process. 454 U.S. at 517, 102 S. Ct. at 785. In *Texaco*, the statute did not require that any specific notice be given to a mineral owner prior to the statutory lapse of a mineral interest. *Id.* at

14

520, 102 S. Ct. at 787. The Court stated that, "[g]enerally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *Id.* at 532, 102 S. Ct. at 793. Citing *Mullane*, the Court distinguished the due-process requirements applicable to an "adjudication" from the due-process requirements for a general law governing the abandonment of property. *Id.* at 535, 102 S. Ct. at 795. The Court stated that a claim regarding lack of specific notice prior to the lapse of property rights has "no greater force than a claim that a self-executing statute of limitations is unconstitutional." *Id.* at 536, S. Ct. at 796.

The Oklahoma Supreme Court in *Dani* relied on *Texaco* in holding that UUPA provided constitutionally sufficient notice. 374 P.3d at 796-98. The court stated that *Texaco* illustrated that due process requirements "do not apply to automatic termination of a property right through operation of statute based on an owner's failure to fulfill certain conditions. Rather, the requirements of due process would apply only to a proceeding brought to adjudicate if that right did in fact terminate." *Id.* at 796. The court determined that "due process is not offended by the automatic transfer of abandoned property into the custody of the [s]tate." *Id.* The court held: "The very nature of the UUPA as a custodial taking statute for property that is presumed abandoned means that communicating notice to potential owners may be difficult. Accordingly, the statute requires mailed notice, publication, and posting on the internet." *Id.* at 798.

If the holder of unclaimed property has an address for the presumed owner, the owner's claim is not barred by the statute of limitations, and the property has a value of at

15

least $100, then MUPA requires the holder to send written notice to the owner at the owner's last known address to inform the owner that the holder possesses the property and to advise the owner of the necessary steps to prevent abandonment. Minn. Stat. § 345.41(e). MUPA also requires the commissioner to "[w]ithin the calendar year next following the year in which abandoned property has been . . . delivered . . . provide public notice of the abandoned property in the manner and frequency the commissioner determines to be most effective and efficient in communicating to the persons appearing to be owners of this property." Minn. Stat. § 345.42, subd. 1. The commissioner must "expend 15 percent of the funds allocated by the legislature to the operations of the unclaimed property division, to comply with the public notice requirements of this subdivision." *Id.* MUPA requires the commissioner to keep a record of the name and last known address of each person appearing to be entitled to the abandoned property available for public inspection. Minn. Stat. § 345.48, subd. 1. The site [www.missingmoney.com](www.missingmoney.com) is also available, requiring only that a person type in a name.

Respondents claim that having to search with a name to see if an individual has property held by the state is somehow burdensome, but if the commissioner provided a website with a list of names, an individual would still have to exert some effort to scroll to a particular name. Respondents admit that a "due process notice requirement is judged with reference to the modern world and practicability." In the modern world, it is not uncommon or burdensome to conduct internet searches. MUPA does not violate procedural due process. This seems especially true when respondents concede that

16

MUPA's statutory scheme provides that "title to personal property always remains with the original owner." We answer the rephrased certified question in the affirmative.

## DECISION

Because MUPA does not create an unconstitutional taking, we have answered the first certified question in the negative. Because MUPA satisfies procedural due process, we have answered the second certified question in the affirmative. Accordingly, we reverse the district court's denial of appellants' motion to dismiss for failure to state a claim upon which relief may be granted and remand for proceedings consistent with the manner in which we have answered the certified questions.

**Reversed and remanded.**