GILDEA, Chief Justice.
*349 This case involves the constitutionality of the Minnesota Unclaimed Property Act, Minn. Stat. §§ 345.31 -.60 (2016). The Act provides that unclaimed property is presumed abandoned and remitted to and held by the State in its general fund until the owners seek to reclaim the property. Id. Appellants allege that their unclaimed property was transferred to the Commissioner of Commerce and held by the State under the Act, and they contend that the State's failure to pay interest accrued on the property while it was in the State's custody violates the Takings Clauses of the Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and the Minnesota Constitution. U.S. Const. amends. V, XIV, § 1 ; Minn. Const. art. I, § 13. They also assert that the State fails to provide adequate notice to property owners that it takes custody of their presumably abandoned property, in violation of the Due Process Clauses of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution. U.S. Const. amend. XIV, § 1 ; Minn. Const. art. I, § 13.
Respondents, Commissioner of Commerce Michael Rothman and the State, moved to dismiss the complaint. The district court denied that motion, but the court certified the Takings and Due Process Clause questions to the court of appeals pursuant to Minn. R. Civ. App. P. 103.03(i). The court of appeals reviewed the certified questions and rejected the constitutional challenges to the Act. Because we conclude that owners of interest-bearing bank accounts-but not the owners of the other property at issue in this case-have a constitutionally protected property right that is taken when the State does not compensate the owners for the lost interest, and that the notice provided under the Act to owners of such property valued over $100 is sufficient to satisfy the requirements of due process, we affirm in part, reverse in part, and remand to the district court for further proceedings.
FACTS[1]
Appellants are four property owners whose property was presumed abandoned under the Act and transferred to the State. Appellant Timothy Hall, Jr. was issued a final paycheck in an amount under $100 from his employer in 2011. Sometime in 2015, Hall learned that the funds from this check had been transferred to the State under the Act. It is unclear whether Hall has sought the return of his property.
In June 2015, appellant Michael Undlin learned from his attorneys that the State was holding property payable to him, worth over $100 in value. The previous holders remitted the property to the State under the Act. The complaint states that Undlin has begun the process for the return of the property.
Appellant Beverly Herron learned from her daughter, who had searched for Herron's name on MissingMoney.com, that the State was holding insurance proceeds in the amount of $236.57 in Herron's name. Herron submitted a claim for the return of her property and received a check for the value of the insurance proceeds.
*350 Finally, appellant Mary Wingfield had an interest-bearing account. In 2014, she received a letter from the bank asking her to contact it regarding the account, but she did not do so. The bank later remitted the balance of Wingfield's account to the State. After she filed a claim for the return of her property, the State sent Wingfield a check for the principal amount, which was in excess of $100,000. But the State did not include the value of the interest that would have accrued had the money remained in Wingfield's account during the time that the State held the money.
Appellants allege, individually and on behalf of a class of all owners of property that has been remitted to the State under the Act, that they did not receive sufficient notice-either from the original holder of their property or from the State-that their property had been remitted to the State. The complaint further alleges that the notice deficiency violates appellants' and the class members' procedural due process rights. Finally, the complaint asserts that the Act effects an unconstitutional taking because claimants do not receive earnings or constructive interest on the unclaimed property after it is delivered to the State.
Respondents moved to dismiss under Minn. R. Civ. P. 12.02(a), (e), for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted. The district court denied the motion to dismiss the due process and unconstitutional taking claims. The court determined that appellants sufficiently alleged a due process claim because they asserted that the notice provided under the Act is not reasonably certain to inform those affected that their property is being remitted to the State. The court determined that appellants also sufficiently alleged a takings claim because respondents took appellants' property and put it in a fund for public use, for which appellants are entitled to just compensation.
Respondents then made a motion, which the district court granted in part, to certify the constitutional questions to the court of appeals as important and doubtful. See Minn. R. Civ. App. P. 103.03(i). The court of appeals answered the certified questions. Hall v.State , 890 N.W.2d 728, 731 (Minn. App. 2017). Regarding the takings question, the court determined that no taking occurs when the Act specifies the disposition of unclaimed property. Id. at 735-36.[2] With respect to the due process issue, the court determined that no process was due under the Act because it does not deprive unclaimed property owners of a protected property interest. Id. at 737.[3] In the alternative, the court determined that, even if the Act does deprive property owners of a protected interest, the notice required under the statute is sufficient. Id. at 738. We granted appellants' petition for review.
ANALYSIS
Appellants challenge the constitutionality of the Act. We review the constitutionality of a statute de novo.
*351 State v. Hensel , 901 N.W.2d 166, 170 (Minn. 2017) ; Schatz v. Interfaith Care Ctr. , 811 N.W.2d 643, 653 (Minn. 2012). In addition, the issues that appellants specifically raise came to the court of appeals as certified questions and therefore these issues present questions of law that we review de novo. See Siewert v. N. States Power Co. , 793 N.W.2d 272, 277 (Minn. 2011) ; Hoffman v. N. States Power Co. , 764 N.W.2d 34, 42 (Minn. 2009) ; Watson ex rel. Hanson v. Metro. Transit Comm'n , 553 N.W.2d 406, 411 (Minn. 1996).
We begin our analysis with a discussion of the Act. It covers a wide range of property, including bank accounts, unclaimed insurance proceeds, and unclaimed wages. See Minn. Stat. §§ 345.32 -.39 (identifying types of property covered by the Act). The Act provides that property is "presumed abandoned" if the property owner does not take action regarding the property for a set period of time, the length of which varies depending on the type of property at issue. Id. For example, if the owner of a bank account does not take any action relating to her account for 3 years (e.g., withdraw, deposit, or communicate with the bank in writing about the account, or receive regular statements by mail), the balance of the account "together with any interest or dividend thereon" is presumed abandoned. Minn. Stat. § 345.32(a). Likewise, funds held by a "life insurance corporation" that are "unclaimed and unpaid for more than three years after the moneys became due and payable" are presumed abandoned. Minn. Stat. § 345.33(a) - (b). And wages owing in the ordinary course of business that an owner fails to claim for more than 1 year are presumed abandoned. Minn. Stat. § 345.39, subd. 3.
Every holder of property (e.g., a bank) that is presumed abandoned must submit an annual report to the Commissioner describing the property, including the property owner's name and last known address. Minn. Stat. § 345.41(a) - (b). At the time of the annual report, the holder "shall pay or deliver" to the Commissioner, the unclaimed property including "all interest, dividends, increments, and accretions due, payable, or distributable on the property on November 1, or October 1 for a life insurance company." Minn. Stat. § 345.43, subd. 2a. Holders of presumptively abandoned property who fail to follow the requirements of the Act are subject to criminal penalties. Minn. Stat. § 345.55.
Before unclaimed property is delivered to the Commissioner, the Act requires that the holder of the property provide notice to the owner advising that the holder is in possession of the property and of the necessary steps to "prevent abandonment." Minn. Stat. § 345.41(e). The holder is required to provide this notice when it has the property owner's address, the owner's claim is not barred by the statute of limitations,[4] and the property's value is $100 or more. Id.
The Commissioner is required to sell all unclaimed property, other than money, that is transferred to the State. Minn. Stat. § 345.47, subd. 1. Money received and proceeds from sales are to be deposited into the State's general fund. Minn. Stat. § 345.48.
The State assumes custody of and responsibility for safekeeping the remitted property. Minn. Stat. § 345.44. The Commissioner must also maintain a record available for public inspection of each owner's *352 name and last known address. Minn. Stat. § 345.48.
Within the next calendar year after the year the unclaimed property is remitted to the Commissioner, the Commissioner must provide notice "in the manner and frequency the Commissioner determines to be most effective and efficient in communicating to the persons appearing to be owners of this property." Minn. Stat. § 345.42, subd. 1. The Commissioner must expend, at a minimum, 15 percent of the funds the Legislature allocates to the unclaimed property division to comply with the public notice requirements, and may provide the notice using print, broadcast, or electronic media. Id.
An owner may make a claim to the unclaimed property at any time. Minn. Stat. § 345.49, subd. 1. But under the Act, and relevant to this case, the State is not obligated to pay to the owner any "income or other increments accruing" on the property after the holder transfers the property to the Commissioner; the State's obligation is to return only the principal to the owner. Minn. Stat. § 345.45.
When the Commissioner receives a claim from the property owner for the return of unclaimed property, the Commissioner can pay the claim, deny the claim, or hold a hearing on the claim. Minn. Stat. § 345.50, subd. 1. An owner may also request repayment from the original holder, who may subsequently seek reimbursement from the Commissioner. Minn. Stat. § 345.44. An owner aggrieved by a decision of the Commissioner may commence an action in district court. Minn. Stat. § 345.51.
With this statutory background in mind, we proceed to address appellants' contention that the Act violates the Takings Clauses and the Due Process Clauses of the United States and Minnesota Constitutions. Appellants specifically contend that the Act effects a taking because the State does not compensate the property owner for the loss of use of the property during the time that the State holds the property and for the actual or constructive interest that the property may have earned. Regarding their due process claim, appellants argue that the Act does not provide notice sufficient to satisfy their procedural due process rights. We address each argument in turn.
I.
We turn first to appellants' takings claim. To establish a taking, appellants must show that: (1) they have a property interest protected by the Fifth Amendment; (2) the government took the property interest; (3) the property interest was taken for public use; and (4) just compensation was not paid. See Ruckelshaus v. Monsanto Co. , 467 U.S. 986, 1000, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984).[5]
The appellants' takings claim stems from the allegation that they hold a protected property right in the interest accrued on their property during the time that the State held it.[6] The specific question *353 we must answer is whether the appellants have a protected property right in the interest earned on the unclaimed property during the time period when the State holds the unclaimed property. The Act contemplates that the holder will transmit the unclaimed property together with interest due on that property to the Commissioner. Minn. Stat. § 345.43, subd. 2a. But the owner is not entitled to any interest earned on the unclaimed property after it comes into the State's possession. Minn. Stat. § 345.45.
Appellants assert that when the State returns the unclaimed property (here, money) to the owner but keeps the interest it earned or could have earned on that property, the State has taken part of appellants' property. For its part, the State contends that no taking occurs here because it is the owner's inaction-not State action-that caused the holder to turn the unclaimed property over to the State.
The State's argument finds some support in the Supreme Court's analysis in Texaco, Inc. v. Short , 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982). There, the Court addressed an Indiana statute that provided that a mineral interest would be extinguished and reverted to the surface owner if the mineral estate went unused for 20 years. Id. at 518, 102 S.Ct. 781. Texaco, whose interest was extinguished under the statute, brought suit alleging that the statute was unconstitutional because the statute effected a taking of Texaco's property without just compensation. Id. at 521-22, 102 S.Ct. 781. The Indiana Supreme Court held that the statute was constitutional as a permissible exercise of the state's police power. Id. at 524, 102 S.Ct. 781. The United States Supreme Court affirmed, concluding that the Indiana statute did not effect a taking. Id. at 530, 102 S.Ct. 781. The Court stated that it "has never required the State to compensate the owner for the consequences of his own neglect." Id. Because "[i]t is the owner's failure to make any use of the property-and not the action of the State-that causes the lapse of the property right," the court held, "there is no 'taking' that requires compensation." Id.[7]
But, as appellants note, the statute at issue in Texaco varies from the Act. Under the Indiana statute, the property owner's right to the property "lapse[d]." 454 U.S. at 529, 102 S.Ct. 781 ("[A]s a result of the failure of the property owner to perform the statutory condition, an interest in fee was deemed as a matter of law to be abandoned and to lapse."). Under the Act, by contrast, the property is merely "presumed,"
*354 not conclusively deemed, to be abandoned. The owner has the right at any time to seek the return of his property from the State; the State acts simply as the custodian for the unclaimed property.[8] In other words, rather than Hall's former employer or Wingfield's bank holding onto the unclaimed property, the State holds the property-but it remains the property of appellants. The distinction appellants draw between the Act and statute at issue in Texaco does not preclude application of the rationale of Texaco .
More important to our analysis though is the nature of the property at issue. The unclaimed property of Hall, Undlin, and Herron was not interest bearing.[9] Because it was not interest bearing before the State came into custody of it, these appellants had no property right to receive the payment of interest. And because no statute authorizes the payment of interest-indeed, the Act specifically states that no interest need be paid-Hall, Undlin, and Herron must search elsewhere for a right to interest on their property. As other states have recognized in somewhat similar circumstances, to require that the State pay interest to these owners of unclaimed property would reward their inattention and provide an inappropriate windfall. See Morris , 77 Cal.Rptr.3d at 804 ; Smyth , 845 N.E.2d at 223-24 ; Dani , 374 P.3d at 794 ; Smolow , 959 A.2d at 303-04 ; Clark , 184 S.W.3d at 914.
In urging us to conclude that the State is required to pay them interest, appellants cite Phillips v. Washington Legal Foundation , in which the Supreme Court recognized that interest earned on client funds held in lawyer trust accounts is the private property of the clients. 524 U.S. 156, 172, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998). But Phillips involved interest that was unquestionably being earned-indeed, was required by law to be earned-on funds to which no presumption of abandonment applied. In this case, by contrast, the property at issue for Hall, Undlin, and Herron was not earning interest before it was transferred to the State, and the complaint is devoid of any allegations that the property earned interest after it was transferred to the State. Accordingly, Phillips is of limited help to appellants. The Supreme Court's more recent decision addressing interest on lawyer trust accounts, Brown v. Legal Foundation of Washington. , 538 U.S. 216, 239-40, 123 S.Ct. 1406, 155 L.Ed.2d 376 (2003), is unhelpful to appellants for the same reason.
Appellants also argue for application of the common-law rule that "interest follows principal." See Phillips , 524 U.S. at 165 n.5, 118 S.Ct. 1925 (discussing the common-law rule). But again, the unclaimed property of Hall, Undlin, and Herron was not generating interest when it came into the hands of the State, and it is unclear whether it earned interest thereafter. Thus, it is also unlike the "interpleaded and deposited fund" in *355 Webb's Fabulous Pharmacies, Inc. v. Beckwith , 449 U.S. 155, 162, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980), the interest on which the Supreme Court found to be private property that could not be taken without just compensation, id. at 164-65, 101 S.Ct. 446, and it therefore falls outside the "narrow circumstances" of that holding. Id. at 164, 101 S.Ct. 446. Moreover, the Act does not leave room for the common-law rule because it specifically provides that the State is not obligated to pay interest that accrues on unclaimed property after that property is transferred to the State. Minn. Stat. § 345.45.
Finally, appellants argue that because they were unable to use their property while the State had custody of it, they are entitled to compensation for that loss of use in the form of constructive interest. For this proposition appellants rely on federal cases involving money seized under forfeiture laws that the government eventually returned. See United States v. $515,060.42 in U.S. Currency , 152 F.3d 491, 505 (6th Cir. 1998) ; United States v. $277,000 U.S. Currency , 69 F.3d 1491, 1493-94 (9th Cir. 1995) ; Brooks v. United States , 980 F.Supp. 321, 321 (E.D. Mo. 1997). These cases held that the government was required to pay interest on the money seized, and so, appellants argue, establish a principle that they have a property right in constructive interest due on private funds held by the government. We are not persuaded.
The cases appellants cite do not involve a claim of an unconstitutional taking by the government. Instead, they address the question whether the government should be allowed to "profit from wrongly seized property" that should not have been forfeited under the police power. $515,060.42 in U.S. Currency , 152 F.3d at 504 ; $277,000 U.S. Currency , 69 F.3d at 1493 ; Brooks , 980 F.Supp. at 321-22 (citing $277,000 U.S. Currency , 69 F.3d at 1493-97 ). But appellants make no claim that the State wrongly took custody of their property, under the police power or otherwise.[10]
Based on our analysis, we conclude that Hall, Undlin, and Herron were not deprived of a property interest protected by the Fifth Amendment when the State refused to pay them interest on their presumably abandoned, previously non-interest-bearing property.
Moreover, in assessing whether the government has effected an unconstitutional taking, the just compensation due is "measured by the property owner's loss rather than the government's gain." Brown , 538 U.S. at 235-36, 123 S.Ct. 1406 ; Bos. Chamber of Commerce v. City of Boston , 217 U.S. 189, 195, 30 S.Ct. 459, 54 L.Ed. 725 (1910). That is, a private party " 'is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole but is not entitled to more.' " Brown , 538 U.S. at 236, 123 S.Ct. 1406 (quoting Olson v. United States , 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236 (1934) ). For Hall, Undlin, and Herron, whose property was not interest bearing when it was transferred to the State, and who (so far as the complaint alleges) were not even aware of the existence of that property, much less able to use it for their own purposes, we are unable to conclude that the failure of the State to pay interest on the property is a loss for which these appellants must be compensated. Thus, even if Hall, Undlin, and Herron had a property interest, they would not have suffered a taking.
*356 Appellant Wingfield, however, has a different type of property than the other appellants. Wingfield's property was in an interest-bearing bank account before it was transferred to the State. Unlike the other appellants' property, which otherwise would not have accrued interest, the transfer of the principal in Wingfield's bank account to the State cut off the accrual of interest. The right to earn interest was part of Wingfield's unclaimed property, and she therefore has the right to receive that interest from the State if she is to be made whole. In other words, Wingfield, unlike Hall, Undlin, and Herron, has suffered an actual loss of interest that she reasonably expected her principal to earn. And she suffered that loss because of the transfer of her property into the custody of the State, as the Act required.
Wingfield is in a situation similar to that of the plaintiff in Cerajeski v. Zoeller , 735 F.3d 577 (7th Cir. 2013). There, the U.S. Court of Appeals for the Seventh Circuit determined that the confiscation of interest on the unclaimed principal from a bank account was a taking under Indiana law. Id. at 582-83. The plaintiff in Cerajeski was a guardian whose ward had an interest-bearing account in an Indiana bank. Id. at 579. The court determined that interest on "interest-bearing unclaimed property is unclaimed property too, and so the property owner can claim it upon proving title, unless the property has been escheated," which it was not because "the law under which it was taken ... is not an escheat statute." Id. at 582. Because the interest had been taken by the state, the court concluded, the plaintiff was entitled to just compensation. Id. at 583.
The Act is similar to the Indiana statute in that the State does not claim to "escheat" the property of the owners or gain title thereof. The State simply becomes the custodian of the unclaimed property until the owner of the property reclaims it. See Minn. Stat. § 345.44 ("Upon the payment or delivery of abandoned property to the commissioner, the state shall assume custody and shall be responsible for the safekeeping thereof...."). And the Act contemplates that, when a valid claim is filed, the State is to "refund" to the owner the "proceeds" that the State received from its sale of the unclaimed property. Minn. Stat. § 345.49. Thus, all of the property must be returned to the owner. This property includes the interest that would have accrued on an interest-bearing bank account had the bank not transferred the balance to the State.
In urging us to reach the opposite conclusion, the State argues that, under Texaco , no taking occurs under a state's unclaimed property act even when a state assumes custody of interest-bearing property and refuses to pay interest when demanded. The State relies on Cwik v. Giannoulias , 237 Ill.2d 409, 341 Ill.Dec. 476, 930 N.E.2d 990 (2010), in which the Supreme Court of Illinois, applying Texaco to the Illinois version of the Uniform Unclaimed Property Act, reasoned that:
[I]f a state legislature can constitutionally enact a statute that divests a neglectful owner of all rights in certain property absent the performance of specified activities evincing a continued and possessory interest in the property over the prescribed statutory period, then it logically follows that the legislature can, constitutionally, take the less drastic measure of enacting a statute that operates to divest those owners of only certain incidents of ownership, without mandating divestiture of all rights in the property.
Id. , 341 Ill.Dec. 476, 930 N.E.2d at 995-96 (emphasis added). In fact, the property owners in Cwik did not allege that their property was interest bearing, see id="p357" href="#p357" data-label="357" data-citation-index="1" class="page-label">*357id. , 341 Ill.Dec. 476, 930 N.E.2d at 993-94, and therefore, to the extent the language in the opinion encompasses interest-bearing property, that language is dicta. See Cerajeski , 735 F.3d at 581 (interpreting Cwik 's holding as applying only to non-interest-bearing property).
Moreover, the Illinois court has previously noted that the Illinois statute, like the Act, does not intend to vest title to abandoned property in the state but intends only that the state hold the property in custody for the owner. Canel v. Topinka , 212 Ill.2d 311, 288 Ill.Dec. 623, 818 N.E.2d 311, 321 (2004). In part on that basis, the Canel court held that the property owner was entitled to dividends on unliquidated stock presumed abandoned under the Illinois statute. Id. , 288 Ill.Dec. 623, 818 N.E.2d at 322. As the court reasoned, "[a]t all times the shares of stock remained the private property of plaintiff. Under the circumstances, the dividends, as an incident of ownership, were also private property." Id. , 288 Ill.Dec. 623, 818 N.E.2d at 325. Having found that the Illinois statute deprived the owner of property, the court remanded the case to determine just compensation. Id. , 288 Ill.Dec. 623, 818 N.E.2d at 326. The court in Cwik did not overrule Canel but instead discussed it extensively. 341 Ill.Dec. 476, 930 N.E.2d at 996-97.
Although the current case involves interest-bearing accounts rather than stock, we find the principles expressed in Canel to be persuasive: the State may not, pursuant to a purportedly custodial statute related to unclaimed property, separate property from its "incident[s] of ownership." 288 Ill.Dec. 623, 818 N.E.2d at 325. As the Seventh Circuit stated in Cerajeski , "if you own a deposit account that pays interest, you own the interest, whether or not state law calls interest property." 735 F.3d at 580.
We therefore hold that the complaint contains sufficient allegations, taken as true, to establish that the State's retention of interest earned on the proceeds of Wingfield's bank account is a taking.[11]
II.
We turn next to appellants' argument that the Act violates their right to procedural due process because it does not provide adequate notice that the State has taken custody of their property.[12] We conduct a "two-step analysis to determine whether the government has violated an *358 individual's procedural due process rights." Sawh v. City of Lino Lakes , 823 N.W.2d 627, 632 (Minn. 2012). We must first "identify whether the government has deprived the individual of a protected life, liberty, or property interest." Id. If the government's action has not deprived the individual of such an interest, no process is due. Id. But if the government's action has deprived the individual of a protected property interest, then we must determine whether the procedures used by the government were constitutionally sufficient. Id.
As we concluded above, appellants Hall, Undlin, and Herron do not have a protected property right in any interest earned while the State had custody of their unclaimed property.[13] They do, of course, have a protected property right in the unclaimed property itself. But the Act does not deprive these appellants of a protected property interest because it merely results in the substitution of the Commissioner as the holder of their unclaimed property. Although appellants contend that their property right has been adversely affected and they are therefore entitled to due process, the Supreme Court has clarified that no deprivation occurs in this context. See Anderson Nat'l Bank v. Luckett , 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692 (1944). In Anderson , the Supreme Court examined Kentucky's unclaimed-property law that required banks to turn over custody of presumptively abandoned deposits to the state. Id. at 236-38, 64 S.Ct. 599. The Supreme Court held that the law did not violate procedural due process by simply placing funds in the state's custody, because the statute "deprives the [owners] of none of their rights as creditors, preserving their right to demand from the state payment of the [funds], and their right to resort to the courts if payment is refused." 321 U.S. at 241-42, 64 S.Ct. 599.
Like the Kentucky statute, the Act presumes property abandoned after a specific period of dormancy and merely substitutes the Commissioner for the holders, preserving the owners' ability to recover abandoned funds from the Commissioner in perpetuity. See Minn. Stat. §§ 345.32 -.39, .44. It also allows the original holder to pay the property owners, who can then obtain reimbursement from the Commissioner. See Minn. Stat. § 345.44 ("Any holder who has paid moneys to the commissioner ... may make payment to any person reasonably appearing to such holder to be entitled thereto, and upon proof of such payment and proof that the payee reasonably appeared entitled thereto, the commissioner shall forthwith reimburse the holder for the payment."). Further, it allows owners to seek judicial review if aggrieved by the Commissioner's decision. See Minn. Stat. §§ 345.49 -.51. Consistent with Anderson , we conclude that the transfer of presumably abandoned property to the State is not a deprivation of a property interest for procedural due process purposes and therefore does not entitle Herron, Undlin, or Hall to due process protections.
But as we discussed above, Wingfield has demonstrated that she has suffered a deprivation of a protected property interest-namely, the monetary interest her interest-bearing account would otherwise have earned had the bank continued to hold her unclaimed property. She therefore is entitled to due process protection, and we must analyze whether the process provided is constitutionally sufficient. Sawh , 823 N.W.2d at 632 (explaining that *359 if the government's actions have deprived the individual of a protected interest, then we must determine whether the procedures used by the government were constitutionally sufficient).
For the process afforded to be constitutionally sufficient, it must provide an individual with notice and a meaningful opportunity to be heard. Mathews v. Eldridge , 424 U.S. 319, 333-34, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ; Mullane v. Cent. Hanover Bank & Tr. Co. , 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."). The government, however, does not necessarily need to provide actual notice. Jones v. Flowers , 547 U.S. 220, 226, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006). Due process is flexible, calling for such procedural protections as a particular situation demands. Mathews , 424 U.S. at 333-34, 96 S.Ct. 893.[14]
Appellants argue that the Act provides inadequate notice because it is not reasonably calculated to inform parties of the proceedings that affect their interests. See Mullane 339 U.S. at 314, 70 S.Ct. 652. They claim that because in Mullane the Supreme Court recognized that "publication alone" is not a reliable means of informing interested parties that their rights are before the courts, see 339 U.S. at 315, 70 S.Ct. 652, the notice given by the Commissioner through the website MissingMoney.com is constitutionally infirm. But appellants received more notice than simply what was provided on the website.
As the Supreme Court recognized in Texaco , the enactment and publication of a law governing abandonment of property can serve as notice of the law's existence and effects. Along with the takings claim asserted in Texaco , the plaintiffs also alleged that the statute was unconstitutional because the lack of a notice provision violated due process. Texaco , 454 U.S. at 531, 102 S.Ct. 781. The statute in Texaco did not require that notice be given to the mineral-interest holder before the 20-year term expired. Id. at 533, 102 S.Ct. 781. The court determined, as to due process, that to "advis[e] its citizens of actions that must be taken to avoid a valid rule of law that [certain property] will be deemed to be abandoned," id. at 531, 102 S.Ct. 781, "[g]enerally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." Id. at 532, 102 S.Ct. 781. The 2-year grace period provided by the Indiana law for mineral owners to register an interest so as to avoid reversion was such a reasonable opportunity, the Court held, basing its decision on "deference to the judgment of [the] state legislature[ ]" and stating that it refused to "displace hastily the judgment of the legislature and to conclude that a legitimate exercise of state legislative power is invalid because citizens might not have been aware of the *360 requirements of the law." Id. at 532-33, 102 S.Ct. 781.
Like the statute at issue in Texaco , the Act is a form of notice to property owners that informs the general public of what will automatically occur if they do not tend to their property. See also Anderson , 321 U.S. at 243, 64 S.Ct. 599 ("The statute itself is notice to all depositors of banks within the state, of the conditions on which the balances of inactive accounts will be deemed presumptively abandoned, and their surrender to the state compelled.").
In addition to the general notice provided by the enactment of the statute itself, the Act requires additional specific steps that provide notice to property holders such as Wingfield. The Act lays out the notice it provides to owners in three sections: (1) Minn. Stat. § 345.41(e), which requires holders to notify owners in writing, before the property's transfer, about how to prevent abandonment; (2) Minn. Stat. § 345.42, which requires that within a year after delivery of abandoned property, the Commissioner must provide public notice of the property in the manner and frequency that the Commissioner determines to be most effective and efficient; and (3) Minn. Stat. § 345.48, which requires that a list of unclaimed property be available at the Department of Commerce for public inspection.
According to the complaint, the Commissioner has chosen to comply with § 345.42 by using the website MissingMoney.com to allow people to enter their names to find out if they have unclaimed property that has been remitted to the State. The process to claim the property through the site is simple; it requires that the owner fill out a form on the MissingMoney.com website and the State then contacts the owner to validate identity and return the property. Frequently Asked Questions , MissingMoney.com, https://www.missingmoney.com/GeneralHelp/FAQ.cfm (last visited Feb. 21, 2017) [opinion attachment]. The Commissioner also engages in other forms of public outreach including events at the Mall of America and State Fair, sends email alerts to lawmakers, and uses a database to find owners due unusually large sums.
We conclude that the numerous types of notice provided by statute including publication, mailed notice by the holder, the ability to inspect public records, and the general notice provided by the statute itself, combine to provide sufficient notice to satisfy the requirements of due process. But, appellants contend, Mullane requires more. We disagree.
As the Court noted in Texaco , "[t]he due process standards of Mullan e apply to an 'adjudication' that is 'to be accorded finality.' " Texaco , 454 U.S. at 534, 102 S.Ct. 781. It was in that context that the Court held that notice by publication was not sufficient to satisfy due process. See Mullane , 339 U.S. at 320, 70 S.Ct. 652. Indeed, "the Court in Mullane itself distinguished the situation in which a State enacted a general rule of law governing the abandonment of property." Texaco , 454 U.S. at 535, 102 S.Ct. 781. The type of notice required for a final adjudication of property rights is more stringent than that required to inform an owner of presumed abandoned, but still reclaimable, property. See Texaco , 454 U.S. at 535, 102 S.Ct. 781 (distinguishing Mullane ). Because property under the Act is always reclaimable, Mullane 's conclusion that notice by publication does not satisfy due process is not controlling here. Moreover, the notice provided under the Act is reasonably calculated to apprise the parties of the status of their property and steps they can take to secure its return, thereby meeting the requirements of Mullane . 339 U.S. at 314, 70 S.Ct. 652. The notice provided under the Act provides not only what is constitutionally required by due process, but it also provided actual *361 notice because Wingfield did in fact learn that her property was held by the State. We therefore hold that the notice provided under the Act meets the requirements of procedural due process.[15]
CONCLUSION
For the foregoing reasons, we affirm the court of appeals' decision in part, reverse in part, and remand to the district court for further proceedings consistent with this opinion.
Affirmed in part, reversed in part, and remanded.
Attachment

On appeal from a motion to dismiss, we accept the facts alleged in the complaint as true. Finn v. Alliance Bank , 860 N.W.2d 638, 653 (Minn. 2015).

The certified question the court of appeals answered was:
When presumptively abandoned property has been delivered to the [commissioner] pursuant to [the Act] and thereafter placed into the general fund for use by the State, has the State effected an unconstitutional taking by failing to compensate owners for the loss of use of that property, including the ability to earn interest on the seized property.
Id. at 734 (first alteration in original).

The certified question the court of appeals answered was: "Is the notice and process provided under [the Act] sufficient to satisfy owners' procedural due process rights." Id. at 736.

There is no claim in this case that a statute of limitations bar applies to any of the property at issue.

The Minnesota Constitution provides that "[p]rivate property shall not be taken, destroyed or damaged for public use without just compensation." Minn. Const. art. I, § 13 (emphasis added). We have observed that, "the language of the Takings Clause of the Minnesota Constitution can be construed to provide broader protections than the Takings Clause of the U.S. Constitution." Wensmann Realty, Inc., v. City of Eagan , 734 N.W.2d 623, 632 n.5 (Minn. 2007). But appellants make no argument that any of their property was "destroyed or damaged." We therefore rely on decisions that have considered challenges under the federal constitution's Takings Clause.

Appellants do not argue that the State's mere act of taking custody of property that was held by others on their behalf was a taking, and they have not claimed that the State has refused to return the principal amount of their property. Instead, they claim that the State's use of their property after taking custody of it was a taking that requires compensation in the form of interest.

Appellate courts in eight states and two federal circuit courts-including the Third Circuit, the Ninth Circuit, California, Illinois, Indiana, Louisiana, North Carolina, Oklahoma, Pennsylvania, and Texas-have applied Texaco and upheld unclaimed property statutes against takings challenges similar to those that appellants make here. See Simon v. Weissmann , 301 Fed. Appx. 107, 112-13 (3d Cir. 2008) ; Turnacliff v. Westly , 546 F.3d 1113, 1119-20 (9th Cir. 2008) ; Morris v. Chiang , 163 Cal.App.4th 753, 77 Cal.Rptr.3d 799, 804-05 (2008) ; Cwik v. Giannoulias , 237 Ill.2d 409, 341 Ill.Dec. 476, 930 N.E.2d 990, 995-98 (2010) ; Smyth v. Carter , 845 N.E.2d 219, 224 (Ind. Ct. App. 2006) ; Hooks v. Treasurer , 961 So.2d 425, 431-33 (La. Ct. App. 2007) ; Rowlette v State , 188 N.C.App. 712, 656 S.E.2d 619, 621-26 (2008) ; Dani v. Miller , 374 P.3d 779, 793-94 (Okla. 2016), cert. denied , --- U.S. ----, 137 S.Ct. 481, 196 L.Ed.2d 386 (2016) ; Smolow v. Hafer , 598 Pa. 561, 959 A.2d 298, 303-04 (2008) ; Clark v. Strayhorn , 184 S.W.3d 906, 913-15 (Tex. Ct. App. 2006). The Ohio Supreme Court reached a contrary conclusion in Sogg v. Zurz , 121 Ohio St.3d 449, 905 N.E.2d 187, 193 (2009).

Thus, the Act is unlike the statute that was at issue in State v. McCoy , 228 Minn. 420, 38 N.W.2d 386 (1949), under which the State brought an action to have certain deposits declared escheated.

For the first time in our court, appellants argue that Undlin alleged that his transferred property included an "item[ ]" that was "reported by ... Pioneer Life Insurance Co.," and suggest that Minn. Stat. § 61A.011, subd. 1 (2016), requires payment of interest on that property. But section 61A.011 merely requires an insurance company to pay interest "computed from the insured's death to the date of payment," id. , which the statute defines as the date on which the insurer issues a check. Id. , subd. 6. It does not, therefore, entitle the payee to further interest. Accordingly, Undlin's property was not interest bearing.

In addition, the view asserted in these cases is not unanimous. See Larson v. United States , 274 F.3d 643, 647 (1st Cir. 2001) (declining to follow $277,000 U.S. Currency on sovereign immunity grounds); United States v. $7,990.00 in U.S. Currency , 170 F.3d 843, 845 (8th Cir. 1999) (same).

The court of appeals appears to have contemplated whether the interest-bearing nature of Wingfield's account merited different treatment of her claims from those of the other appellants but did not address the issue, instead reversing the district court's order denying dismissal of her claim because appellants sued on behalf of a class and therefore the court of appeals "consider[ed] only respondents' common claims." Hall , 890 N.W.2d at 735 n.1. But the matter was before the district court on a motion to dismiss, not a motion for class certification. See 7B Charles Alan Wright et al., Federal Practice and Procedure § 1795 (3d ed. 2005) ("When a class action is not maintainable, the litigation usually will be allowed to proceed to determine the rights of the individual plaintiffs ... who originally were named as the class representatives."); cf. Lumbermens Mut. Cas. Co. v. Rhodes , 403 F.2d 2, 5-6 (10th Cir. 1968) ("[E]ven though a class action does not meet the requirements of Rule 23, it is not subject to dismissal if it also states a claim for relief against the defendant or defendants named individually."). We leave for further litigation in the district court on remand whether Wingfield can prove her claim of a taking and, if so, what constitutes just compensation.

The due process protection provided under the Minnesota Constitution is "identical to the due process guaranteed under the U.S. Constitution." In re Individual 35W Bridge Litig. , 806 N.W.2d 820, 829 (Minn. 2011) (citing Sartori v. Harnischfeger Corp. , 432 N.W.2d 448, 453 (Minn. 1988) ).

Appellants argue that a mere interference with their property gives rise to due process protections. We disagree. In Sawh , we noted the threshold question is whether a deprivation has occurred. 823 N.W.2d at 632.

In Mathews , the Court set out a three-part framework for due process challenges. Under that framework, the Court balances (1) the interest affected by the state's action; (2) the risk of an erroneous deprivation; and (3) the state's interest "including the function involved and the fiscal and administrative burdens" in providing greater procedural safeguards. 424 U.S. at 334-35, 96 S.Ct. 893. Appellants do not contend that we should apply this framework to assess their due process claim. Instead, the focus of their argument is that the notice they received was not sufficient to satisfy due process. Our analysis accordingly focuses on the notice issue appellants raise.

Because this case does not involve a property owner with an interest-bearing bank account with a value that is under $100, we need not and do not reach the question of whether the process afforded under the Act is sufficient for owners of such property. See Minn. Stat. § 345.41(e) (requiring holder in possession of property to provide written notice to owners of property valued at $100 or more).